868 F.2d 1190
 Floyd FOX, d/b/a Mazda of Weatherford, Kae Myers, d/b/a Kae
Myers Mazda; Floyd Fox; Floyd Fox Mazda, Inc., Plaintiffs,
and
Fox Motors, Inc.; Kae Myers Motors, Inc., d/b/a Kae Myers
Mazda, Plaintiffs-Appellants,
v.
MAZDA CORPORATION OF AMERICA; Mazda Motors of America;
Mazda Distributors (Pacific), Inc.; Mazda Motors
of America (Central), Inc., Defendants,
Mazda Distributors (Gulf), Inc., Defendant-Appellee.
 No. 87-2609.
 United States Court of Appeals,
Tenth Circuit.
 March 1, 1989.
 
 Jack N. Price, Austin Tex., for plaintiffs-appellants.
 Charles T. Newton, Jr. (Richard D. Milvenan, Vinson & Elkins, of counsel, with him on the brief), Houston, Tex., Murray E. Abowitz, Noma D. Gurich, Abowitz & Welch, Oklahoma City, Okl., of counsel, with him on the brief), for defendant-appellee.
 Before HOLLOWAY, Chief Judge, and BARRETT and EBEL, Circuit Judges.
 BARRETT, Senior Circuit Judge.
 
 
 1
 Fox Motors, Inc. (Fox) and Kae Myers Motors, Inc. (Myers), hereinafter collectively referred to as appellants, appeal from a stipulated judgment of $75,000 entered against Mazda Distributor (Gulf), Inc. for the purpose of challenging rulings of the trial court limiting appellants' proof of damages.
 
 
 2
 This case is before us for the second time. The relevant facts were detailed in our prior opinion, Fox Motors, Inc. v. Mazda Distributors (Gulf), 806 F.2d 953 (10th Cir.1986) (Fox I ). In Fox I, we observed:
 
 
 3
 Mazda automobiles are manufactured in Japan and imported into the United States. As of May 1978, Central handled Mazda imports bound for thirty-one western and midwestern states. Central provided vehicles to Gulf, an independently owned company which in turn distributed vehicles to individual dealerships in eleven states near the Gulf of Mexico. Fox and Myers, Mazda dealers since 1972, are dealerships established and supplied by Gulf. Neither dealer carried the vehicles of competing manufacturers along with those of Mazda, although after 1973 they were free to do so.
 
 
 4
 Mazda experienced poor sales between 1974 and 1977. By 1978, the only Mazda vehicle available from distributors was a new subcompact, the GLC. Many of these cars accumulated in Gulf's inventory. A number of dealers, including Fox and Myers, became financially weakened. Nonetheless, both were initially encouraged to remain with Mazda in anticipation of new, better selling models. Mazda's sales began improving in 1978 with the introduction of a highly successful sports car, the RX-7.
 
 
 5
 RX-7s were popular but scarce. Consequently, Central was required to allocate its supply among distributors, who were required to do the same among dealers. Gulf implemented an allocation system which provided dealers with RX-7s in proportion to the number of GLCs which each dealer had sold during previous three-month intervals. In other words, the better dealers, those who had been more successful at moving GLCs, received a greater number of RX-7s. Notably, a dealer could not obtain additional RX-7s by increasing its purchases of GLCs from Gulf; it could only get more RX-7s by selling GLCs. Thus, those who continued to sell more GLCs were able to purchase more of the scarce RX-7s than the less successful Mazda dealers. Under this system, Gulf was able to shift its inventory of GLCs to dealers, who were selling them at a discount.
 
 
 6
 During this period of increased sales, Gulf added a significant number of new dealers. These dealers received an initial allotment of RX-7s without regard for any initial success in marketing GLCs. This allocation system remained in effect from March 1978 until April 1979, when RX-7 sales were included in the formula for obtaining additional cars.
 
 
 7
 * * *
 
 
 8
 * * *
 
 
 9
 Fox and Myers brought this action for damages. The district court ultimately submitted the case to the jury on the anti-trust claims: (1) that Gulf's allocation method constituted a presumptively illegal tying arrangements, and (2) that Central had conspired with Gulf to implement the system. This court also submitted the contention that Gulf's conduct with respect to Fox and Myers violated the Dealers' Act. In accordance with the jury verdict in favor of Fox and Myers on these claims, the court entered a treble damage judgment of approximately $1 million for Fox and $1.4 million for Myers, plus attorney's fees and interest. The district court denied defendants' post-trial motions for judgment notwithstanding the verdict and for new trial (footnote omitted).
 
 
 10
 806 F.2d at p. 956.
 
 
 11
 Thereafter, we reversed the judgment of the district court imposing liability upon Central and Gulf under the antitrust laws and set aside the damages awarded thereon. However, we affirmed Gulf's liability under the Automobile Dealers' Day in Court Act, 15 U.S.C. Secs. 1221, et seq., (Dealers' Act), and accordingly remanded for a new trial on the issue of damages only. In so doing, we said:
 
 
 12
 Fox and Myers presented a damage model based upon lost profits, which purported to represent their damages under both the antitrust laws and the Dealers' Act.... Because it is impossible to determine on what basis the jury computed the damages, a new trial is required to assess damages under the Dealers' Act.
 
 
 13
 Any damage model submitted on remand may include only those losses attributable to Gulf's discriminatory allocation of vehicles. Central's actions are not at issue. Similarly, the effect of Gulf's policies and practices which are not directly related to the allocation system may not be included. Fox and Myers otherwise remain free to establish the number of RX-7s which they would have received were it not for the discrimination against established dealers.
 
 
 14
 806 F.2d at p. 961.
 
 
 15
 Fox and Myers subsequently filed a motion for rehearing in which they requested that the judgment of the district court be affirmed, or, alternatively, that the judgment of the district court be affirmed as to the actual damages awarded under the Dealers' Act or "remanded for retrial on damages with the maldistribution between sales areas to be considered in awarding damages subject to a determination of the legal responsibility of Gulf and Central for such maldistribution." Gulf also filed a petition for rehearing requesting that we vacate that portion of our opinion relative to the Dealers' Act issue or, alternatively, that we grant a new trial on all issues relative to the Dealers' Act.
 
 
 16
 On January 22, 1987, we entered an order denying both petitions for rehearing. Thereafter, the parties proceeded in accordance with our remand for a new trial on the issue of Dealers' Act damages only. On April 10, 1987, the district court entered the following minute order:
 
 
 17
 At the status/scheduling conference held in this matter, the parties advised the Court that they were unable to agree on the parameters of the damage model the plaintiffs were in process of devising.... Accordingly, the Court declines at this time to issue any directives to the plaintiffs except to advise said parties that in preparing the damage model they must comply with the limitations expressed by the United States Court of Appeals for the Tenth Circuit....
 
 
 18
 (R., Vol. I, Tab 9).
 
 
 19
 An expanded order was entered by the district court on June 23, 1987:
 
 
 20
 The matter now comes before the Court on ... Motion ... wherein the Court is urged to reconsider and clarify its position. The defendants have complained that the requested clarification is necessary since the plaintiffs' recent conduct, communications and pretrial preparations indicate an intention not to comply with the appellate court's guidelines ... and the Court, after reviewing the parties' submissions, makes the following determinations:
 
 
 21
 (1) The Order of April 10, 1987, advised the plaintiffs that in preparing their damage model they must comply with the limitations expressed by the appellate court in its Opinion of November 26, 1986.
 
 
 22
 (2) The parties are again advised that the Court does not intend to issue specific directives regarding the proposed damage model except to the extent that the plaintiffs are hereby DIRECTED to tailor their discovery requests to seek only evidence concerning the plaintiffs' losses attributable to this defendant's discriminatory allocation of vehicles and are further DIRECTED in preparing their damage model to comply with the limitations imposed by the Tenth Circuit. Any deviation from the mandate of the Tenth Circuit in the proposed model will render that portion of the plaintiffs' evidence inadmissible.
 
 
 23
 (R., Vol. II, Tab 29).
 
 
 24
 On July 30, 1987, appellants submitted eight requested jury instructions. Within their proposed damage instructions, appellants requested damages for lost profits "from the date the damage was suffered until ... July 31, 1987," and damages for loss of dealership market value that the dealership would have had at "the end of the damage period, i.e., as of July 31, 1987." (R., Vol. II, Tab 37, pp. 4-5).
 
 
 25
 On August 3, 1987, appellees filed a motion in limine requesting inter alia that the district court enter an order prohibiting appellants from presenting any evidence setting forth projected damages for lost profits and loss of dealership market value. Appellees argued that such an order was necessary to insure appellants' compliance with Fox I in which we remanded solely for the quantification of damages arising from the discriminatory allocation of RX-7s from May, 1978, to April, 1979.
 
 
 26
 Hearings were conducted on Appellees' motions on August 6 and 10, 1987. At the conclusion of the hearings, the district court found:
 
 
 27
 THE COURT: All right, let's go on the record. Let the record reflect that after hearing argument of counsel, and having examined both the briefs and carefully examining the 10th Circuit Court of Appeals' Opinion in this case, Jack [Mr. Price, Attorney for Appellants], I am convinced that you have misperceived entirely what the Circuit said in regard to this case.
 
 
 28
 I am of the opinion, after reading it, that you are severly [sic] restricted with regard to what damages you can prove, and that basically, it is that you can prove what RX-7's your clients would have received during that period of time, [May, 1978, to April, 1979] if they had not been subjected to the discriminatory allocation system, in that some RX-7's were awarded to new dealers without a track record on GLC's, and that the only damages that you'll be allowed to recover, in this case, are for the loss of those RX-7's that you would have received if they had not been allocated or distributed to the new dealers. And that that would, of necessity, include a consideration of which RX-7's would have gone to other established dealers, without there being any sub-class of weakened, or stunted, to use the term that you have used, dealerships (emphasis added).
 
 
 29
 (R., Vol. IX, pp. 44-45).
 
 
 30
 Thereafter, the court entered an order granting appellees' motion in limine, excluding the testimony and damage model of Dr. Richard Burgess, appellants' damage expert, relative to lost profits and loss of dealership market value. The court limited appellants' evidence of damages to those damages incurred between May, 1978, and April, 1979, as a result of appellees' discriminatory allocation of RX-7s.
 
 
 31
 On October 19, 1987, the parties entered into a stipulated judgment which provided, inter alia:
 
 
 32
 [T]he parties [have] advised the Court that for the purpose of resolving the litigation without the necessity of trial [and] that they have agreed upon a figure [$75,000] which represents liquidated damages, costs and interest to August 10, 1987, based on the Court's rulings related to damages. By agreeing to this order, defendant does not admit that under the format that the Court outlined in its various rulings sustaining the motions of the defendant that plaintiffs were in any way damaged by defendant, and plaintiffs do not waive their right to appeal and complain of and seek reversal of the judgment and the rulings of the Court on defendant's Motion in Limine, the exclusion of plaintiffs' damage testimony.... [P]laintiffs have agreed that they will not argue on appeal or in any subsequent proceeding that defendant has admitted that plaintiffs suffered any damages, and defendant has agreed that it will not argue that plaintiffs have waived their right of appeal. Specifically the parties reserve their respective rights to contest damages if in the future that issue should be presented for determination.
 
 
 33
 (R., Vol. II, Tab 66).
 
 
 34
 On appeal, appellants contend that: (1) the fact that Fox and Myers were damaged is the law of the case under Fox I and the standard of review of proof relative to the amount of damages is one of "just and reasonable estimate," and (2) the district court erroneously restricted appellants' proof of damages. Because of its dispositive nature, our discussion will be limited to appellants' second allegation of error.
 
 
 35
 Appellants contend that the rulings of the district court erroneously restricted their proof of damages. Appellants argue that the exclusion of Dr. Burgess' testimony and damage model prevented them from proving damages by judicially accepted methods, that the district court's rulings were contrary to our holdings in Fox I, and that the excluded damage model correctly evaluated the impact of additional RX-7's on their dealerships in accordance with our remand in Fox I. Appellants also argue that the court's refusal to allow them to present evidence of lost profits was illogical and contrary to established damage principles.
 
 
 36
 Appellees respond that the district court properly excluded Dr. Burgess' testimony and his damage model because it did not comply with our holding and remand in Fox I. Appellees argue that under the law of the case doctrine, the district court was obligated to follow everything decided "either expressly or by necessary implication" (in Fox I ), Cherokee Nation v. Oklahoma, 461 F.2d 674, 678 (10th Cir.), cert. denied, 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 489 (1972), and that the district court properly followed the law of the case doctrine in concluding that Dr. Burgess' testimony and damage model did not comply with our holding and remand in Fox I. We agree.
 
 
 37
 The law of the case doctrine applies only when, as here, there has been a final decision. In Gage v. General Motors, 796 F.2d 345, 349 (10th Cir.1986), we observed:
 
 
 38
 The law of the case doctrine is a restriction self-imposed by the courts in the interests of judicial efficiency. Messinger v. Anderson, 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912); Bromley v. Crisp, 561 F.2d 1351, 1363 (10th Cir.1977), cert. denied, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 499 (1978). It is a rule based on sound public policy that litigation should come to an end, Todd Shipyards v. Auto Transport, S.A., 763 F.2d 745 (5th Cir.1985), and is designed to bring about a quick resolution of disputes by preventing continued re-argument of issues already decided. Major v. Benton, 647 F.2d 110, 112 (10th Cir.1981).
 
 
 39
 Consistent with our remand in Fox I, the law of the case vis-a-vis damages recoverable by the appellants under the Dealers' Act was limited to:
 
 
 40
 only those losses attributable to Gulf's discriminating allocation of vehicles.... Fox and Myers otherwise remain free to establish the number of RX-7s which they would have received were it not for the discrimination against established dealers.
 
 
 41
 806 F.2d at p. 956.
 
 
 42
 The district court determined that the above-quoted language prohibited appellants from introducing Dr. Burgess' proffered testimony and damage model. As set forth supra, the court found that appellants were limited under Fox I to proving "what RX-7s your clients would have received during that period of time, if they had not been subjected to the discriminatory allocation system" and "that the only damages that you'll be allowed to recover ... are for the loss of RX-7s that you would have received if they had not been allocated or distributed to new dealers." The district court precluded the introduction of Dr. Burgess' testimony and damage model which projected appellants lost profits and loss of dealership market value "from the date that damage was suffered until ... July 31, 1987."
 
 
 43
 "For purposes of standard of review, decisions by judges are traditionally divided into three categories, denominated questions of law (reviewable de novo ), questions of fact (reviewable for clear error), and matters of discretion (reviewable for 'abuse of discretion')." Pierce v. Underwood, --- U.S. ----, ----, 108 S.Ct. 2541, 2546, 101 L.Ed.2d 490 (1988). The decision to admit or exclude evidence is within the sound discretion of the district court, and, on appeal, reviewable only for an abuse of discretion. Firestone Fire & Rubber Co. v. Pearson, 769 F.2d 1471, 1483 (10th Cir.1985). See also Fortier v. Donna Anna Plaza Partners, 747 F.2d 1324, 1331 (10th Cir.1984); Rasmussen Drilling v. Kerr-McGee Nuclear Corp., 571 F.2d 1144, 1149 (10th Cir.1978). Applying this standard to the facts herein, we cannot hold that the district court erred in excluding Dr. Burgess' testimony and damage model.
 
 
 44
 Dr. Burgess' proffered testimony went well beyond the bounds of our remand which was "to include only those losses attributable to Gulf's discriminating allocation of vehicles" and, rather, attempted to quantify appellants' lost profits and loss of dealership market value "from the date that damage was suffered until ... July 31, 1987."
 
 
 45
 We AFFIRM.