Kenneth Franklin McEWEN, as Representative of the Estate of Lawrence Robert McEwen, Deceased, Plaintiff–Appellant,

v.

The CITY OF NORMAN, OKLAHOMA, and Jim Parks, Individually and in his Official Capacity as a Police Officer of the City of Norman, Defendants–Appellees.

No. 89–6388.

United States Court of Appeals, Tenth Circuit.

March 1, 1991.

Mark Hammons of Hammons, Taylor & Moore, Oklahoma City, Okl., for plaintiff-appellant.

Chris J. Collins (Burton J. Johnson with him on the brief), of Looney, Nichols, Johnson & Hayes, Oklahoma City, Okl., and Robert E. Manchester (Haven Tobias with him on the brief), of Manchester, Hiltgen & Healy, Oklahoma City, Okl., for defendants-appellees.

Before HOLLOWAY, Chief Judge, BARRETT and TACHA, Circuit Judges.

BARRETT, Senior Circuit Judge.

Plaintiff below, Kenneth Franklin McEwen, as representative of the Estate of Lawrence Robert McEwen, deceased, appeals from the district court's judgment on jury verdict in this civil rights damage action in favor of defendants, the City of Norman, Oklahoma, and Jim Parks, individually and in his capacity as a police officer of the City of Norman.

Plaintiff's claim was based on alleged Fourth and Fourteenth Amendment violations. Plaintiff alleged that: defendant Officer Parks employed the deliberate use of a deadly force in the apprehension of a misdemeanant; defendant City of Norman failed to supervise and discipline Officer Parks; and the City concealed and ratified Officer Parks' actions. The plaintiff's complaint was anchored to 42 U.S.C. § 1983 and sought substantial damage awards, including damages under a pendent state claim. (R., Vol. I, Tab 1).

At the conclusion of the evidence, and upon motions for directed verdicts, the court denied defendant Parks' motion on both the issue of his liability involving the collision of his police patrol vehicle with Lawrence McEwen's motorcycle and his alleged use of excessive force in arresting

McEwen following the collision. The trial court did grant the City of Norman's motion for directed verdict on the alleged use of excessive force charge, but denied its motion relative to the "roadblock" and "ramming" issue involved in the collision.

### Facts

At about 1:58 a.m. on August 28, 1986, Officer Mike Freeman who was employed by the City of Norman, Oklahoma, observed a motorcycle driven by decedent Lawrence Robert McEwen with his brother, Kenneth McEwen, II, riding as a passenger speeding northbound on Porter Avenue in Norman, Oklahoma. Freeman attempted to intercept and stop the motorcycle by turning on his patrol vehicle's red light. Instead of stopping, the motorcycle picked up speed. As Officer Freeman continued his pursuit of the motorcycle, he radioed the police dispatcher and informed his supervisor of the ongoing pursuit.

The motorcycle proceeded northbound on Porter Avenue before turning onto Crystal Bend Street. Eventually the motorcycle headed westbound on Dale Street at a high rate of speed with Officer Freeman still in pursuit. Defendant Officer Parks of the Oklahoma City Police force, then in his patrol vehicle, had heard the radio dispatch concerning the motorcycle pursuit. He contacted the police dispatcher and notified him that he would proceed to assist Officer Freeman. Parks proceeded southbound on Stubbeman and turned eastbound on Dale in the hope that his presence would encourage the operator of the motorcycle to stop. Such was not to be. The motorcycle drove past Officer Parks' vehicle in an attempt to turn northbound on Stubbeman. Lawrence McEwen lost control of the motorcycle and Kenneth McEwen, II, was ejected in the process. At the same time, Officer Parks had backed his vehicle onto Stubbeman so that his vehicle was positioned northbound. Plaintiff contends that Officer Parks positioned his patrol vehicle so as to blockade the street, thus using deadly force in the apprehension of Lawrence McEwen. Defendants specifically deny that Officer Parks intended to create a roadblock, but, and rather, that he had moved his vehicle

only with intent to pursue the motorcycle. In any event, Lawrence McEwen righted the motorcycle and drove it southbound on Stubbeman toward Officer Parks' patrol vehicle, where it collided on the driver's side in the area of the front tire.

As a result of the impact Lawrence McEwen was thrown from the motorcycle. He was thereafter arrested by Officer Parks. Plaintiff contends that, as the injured McEwen lay on the ground, Officer Parks pushed him down by placing a foot on his back, flipped McEwen back and forth from his stomach to his side or chest, and threatened to put him "out of his misery" with a drawn gun even though Lawrence McEwen offered no resistance. Defendants counter that, as Officer Parks approached Lawrence McEwen lying face down in a ditch, McEwen got up on his hands and knees and Officer Parks directed McEwen to "freeze" because he wanted McEwen's hands out in front of him; Officer Parks had not drawn his gun; Officer Parks proceeded to handcuff Lawrence McEwen and raise him to his feet as McEwen was resisting him; when McEwen remarked that he was "hurting inside, real bad," Officer Parks asked Officer Freeman to call for an ambulance which arrived within a few minutes; and Officer Parks did not flip McEwen's body back and forth. Lawrence McEwen later died at the hospital.

Following a nine-day trial, the jury returned a verdict finding that (a) plaintiff had failed to prove the essential elements of his 42 U.S.C. § 1983 civil rights claim of unreasonable seizure with a police vehicle against defendant Officer Jim Parks, and (b) plaintiff failed to prove the essential elements of his 42 U.S.C. § 1983 civil rights claim against the defendant City of Norman based on the unreasonable seizure with a police vehicle. Judgment was entered thereon.

Plaintiff filed a "Motion for Relief from Judgment" based solely on alleged "surprise and misconduct" because witnesses Officer Post, Donald Boyd and defendant Parks offered materially different testimony at trial than that given by deposition

and no supplementation had been filed notifying plaintiff that they had changed their positions. (R., Vol. I., Tab 169). The trial court treated the aforesaid motion as a Rule 60(b)(3), Fed.R.Civ.P. motion and denied it by a detailed Order. *Id.* at Tab 180.

### Appellate Contentions—Discussion

On appeal, plaintiff contends that: (1) the expert testimony of Samuel Chapman was inadmissible and highly prejudicial, (2) the court permitted improper impeachment of witness Jamie Hall, (3) the admission of Lawrence McEwen's blood alcohol content was improper, (4) the trial court improperly and prejudicially allowed counsel for both defendants to examine witnesses and argue to the jury, (5) the court's jury instructions were erroneous and prejudicial, (6) the trial court improperly allowed dramatizations of defendants' evidence, and (7) the accumulations of errors requires reversal.

### I.

Plaintiff contends that the expert testimony of Professor Samuel G. Chapman on questions of law and credibility was inadmissible and highly prejudicial.

Samuel Chapman, a professor of political science and the director of the Law Enforcement Administration degree program at the University of Oklahoma, was called by the defendants to give expert testimony relative to "[c]ompliance or noncompliance with police policy and police procedure" applicable in this case. (R., Vol. X, pp. 1505–10). Chapman had obtained a Masters Degree in criminology and had taught at the University of Oklahoma for twenty-two years. In his opening testimony, Chapman related that he had studied photographs, read depositions, visited the scene, interviewed some persons and had been present throughout the entire trial in preparation for his opinion testimony in four areas: (1) the propriety of the police pursuit of the motorcycle, (2) the review procedures of the Chief and the Board, (3) the roadblocks, and (4) the method of arrest and the handling of the incident after the accident. *Id.* at 1511.

Plaintiff had deposed Chapman and had filed a Motion in Limine with supporting brief seeking to exclude his testimony. Neither the motion (Docket Sheet No. 75) nor the brief (Docket Sheet No. 76) has been certified by plaintiff-appellant as part of the record on appeal. The trial court reserved ruling and, during trial, read the deposition of Chapman. (R., Vol. VIII, pp. 1311–12). Later, the court ruled, out of the presence of the jury, that Chapman would be permitted to testify. (R., Vol. IX, pp. 1453–54). The court further stated that, as a matter of courtesy, the plaintiff was to have any other opportunity he wished to make a record on that ruling. *Id.*

Chapman was then qualified as an expert witness, without objection. Indeed, counsel for plaintiff objected only once and only in part to Chapman's testimony. In that objection, counsel asserted that testimony regarding the propriety of the police pursuit was irrelevant because plaintiff had not challenged this and did not seek damages based thereon. (R., Vol. X, p. 1512). The objection was overruled and the court observed that plaintiff had presented some "[v]ery pointed testimony that went to the pursuit." *Id.*

At the conclusion of Chapman's testimony the trial court instructed the jury that, while other experts had testified on velocities and measurements and rendered opinions thereon, Chapman had testified "[t]o things other than scientific facts and opinions based on them." *Id.* at 1536. Pointedly, the court noted that Chapman had been permitted "[t]o include, *without objection*, some matters of a character that are within your common knowledge because they were entwined and involved with the basis for his expert opinion on matters which may not be among your common knowledge." *Id.* at 1537 (emphasis supplied). The court concluded its instruction as follows:

And the reason I'm emphasizing this is that you understand, in this expert witness's testimony as well as with the other expert witnesses, you are not to surrender your own views as to what the facts are, because you are the final judges of the facts. You can simply take

all of this testimony and give it just such weight and value as it's entitled to receive.

I do not, for a minute, wish to cast any kind of opinion on any of the expert's opinions here, but they did come to you in different forms, the last one involving things that are within your common knowledge and decision-making process without the helping of experts, but I permitted this expert witness to talk about things as it might bear on the issue of reasonableness or unreasonableness in the case, or the issues of excessive force, and the issues of policy or custom, as will be later fully explained to you in my instructions.

But in no instance and in no event are you to surrender your complete independence in finding the facts as you believe they exist from the evidence, and that statement applies to all of the expert witnesses in the trial.

*Id.*

■ Plaintiff urges us to adopt the rule followed in *Palmerin v. City of Riverside*, 794 F.2d 1409 (9th Cir.1986), where the court held that where the substance of an objection has been thoroughly explained during the hearing on the Motion in Limine, and the trial court's ruling thereon was explicit and definitive, no further action is required to preserve the issue of admissibility of that evidence for appeal. *See also American Home Assur. Co. v. Sunshine Supermarket, Inc.*, 753 F.2d 321 (3d Cir.1985) (when trial court conducted a hearing on a Motion in Limine on the admissibility of evidence and rendered a definitive ruling thereon, making it clear that the ruling would not be reconsidered, no contemporaneous objection to the evidence at trial was required to preserve the issue under Rule 103(a) of the Federal Rules of Evidence); *Robinson v. Shapiro*, 646 F.2d 734 (2d Cir.1981); *Werner v. Upjohn Co.*, 628 F.2d 848 (4th Cir.1980), *cert. denied*, 449 U.S. 1080, 101 S.Ct. 862, 66 L.Ed.2d 804 (1981). The difficulty with plaintiff's position is that even if we were inclined to follow the rule in these cases, we would be lacking the "substance" of plaintiff's objection because plaintiff did not make his Mo-

tion in Limine or Brief (Docket Sheet Nos. 75 and 76) part of the record on appeal. Thus, we have nothing to review.

■ In any case, we decline to follow the *Palmerin* rule. In *Sil–Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1512–13 (10th Cir. 1990), this court held that an objection made to a jury instruction at conference did not satisfy the requirement of Rule 51, Fed.R.Civ.P., i.e., that a party must object to an instruction before the jury retires to consider its verdict. We held that:

At a minimum, counsel must note for the record at the close of the charge that his previous objections stand, although we have been critical of this practice as well. *See, e.g., Aspen Highlands Skiing Corp. v. Aspen Skiing Co.*, 738 F.2d 1509, 1514–15 (10th Cir.1984), *aff'd*, 472 U.S. 585, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985).

*Sil–Flo* is consistent with *Northwestern Flyers, Inc. v. Olson Bros. Mfg, Co.*, 679 F.2d 1264 (8th Cir.1982), *Collins v. Wayne Corp.*, 621 F.2d 777 (5th Cir.1980) and *Douthit v. Jones*, 619 F.2d 527 (5th Cir. 1980), which hold that where a party objected to the admissibility of evidence in a Motion in Limine but did not interpose an objection at trial, the issue was not preserved for appeal. Thus we hold that, because plaintiff did not object to Professor Chapman's testimony at trial, the issue was not preserved for appeal. A party whose motion in limine has been overruled must nevertheless object when the error he sought to prevent by his motion occurs at trial. Only by specific, timely trial objection can the trial court entertain reconsideration of the grounds of the motion in light of the actual trial testimony and the surrounding circumstances developed at trial.

■ In recognition of the broad discretion vested in the trial court, evidentiary rulings made over contemporaneous objection will be upheld on appeal unless they constitute an abuse of discretion. *Fox v. Mazda Corp. of America*, 868 F.2d 1190 (10th Cir.1989); *Firestone Fire & Rubber Co. v. Pearson*, 769 F.2d 1471 (10th Cir. 1985). Here, plaintiff's only contemporane-

ous objection to Chapman's testimony related to the propriety of the pursuit. We hold that the district court did not abuse its discretion in admitting this testimony, given the fact that plaintiff introduced testimony on this subject prior to Chapman's testimony.

■ As to the rest of plaintiff's allegations of error on appeal with regard to Chapman's testimony, we must now determine, absent a contemporaneous objection, whether the admission of Chapman's testimony constituted "plain error."

Rule 103(a)(1), (d), Fed.R.Evid., 28 U.S.C.A. provides:

> (a) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
>
> (1) Objection. In case the ruling is one admitting evidence a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context; or
>
> \* \* \* \* \* \*
>
> (d) Plain error. Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court.

The "plain error" exception in civil cases has been limited to errors which seriously affect "'the fairness, integrity or public reputation of judicial proceedings,'" *Karns v. Emerson Elec. Co.*, 817 F.2d 1452, 1460 (10th Cir.1987) *citing to Aspen Highlands Skiing Corp. v. Aspen Skiing Corp.*, 738 F.2d 1509, 1516 (10th Cir.1984), *aff'd*, 472 U.S. 585, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985), *quoting from Rowe International, Inc. v. J.B. Enterprises, Inc.*, 647 F.2d 830, 835 (8th Cir.1981). *See also Bannister v. Town of Noble, Okla.*, 812 F.2d 1265, 1271 (10th Cir.1987).

In *Specht v. Jensen*, 853 F.2d 805 (10th Cir.1988), *cert. denied* 488 U.S. 1008, 109 S.Ct. 792, 102 L.Ed.2d 783 (1989), cited and relied upon by plaintiff, we held that a legal expert should not have been permitted to give testimony relative to legal conclusions he drew from the evidence presented—that there had been a search of the residence—because such opinion testimony interfered with the trial judge's role as sole arbiter of the law. No error of that kind occurred in the instant case. This case is more analogous to *Karns v. Emerson Elec. Co., supra,* a products liability case, where we found no abuse of discretion, and thus no plain error, in the trial court's admission of certain expert testimony:

> Defendant argues that the district court erred in permitting plaintiff's expert, Robert Black, to testify that the XR–90 was 'unreasonably dangerous beyond the expectation of the average user ...,' and that 'Emerson acted recklessly' in producing and distributing it ... Fed. R.Evid. 704(a) provides that an expert's opinion testimony 'is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.' Opinions embracing legal standards may, however, be excluded for other reasons, such as the likelihood of jury confusion, the danger of unfair prejudice, or the inability of such evidence to assist the trier of fact. *See* Fed.R.Evid. 403, 702; *Strong v. E.I. DuPont de Nemours Co.*, 667 F.2d 682, 685–86 (8th Cir.1981) (district court did not err· in excluding expert's testimony that product was 'unreasonably dangerous'). These are matters committed to the trial court's discretion, and we review a decision admitting or excluding such testimony only for abuse of discretion....
>
> Here, the most that can be said is that the testimony defendant challenges was not helpful to the jury in deciding the case, since the expert was, in effect, merely telling the jury what result to reach on two of the elements. We do not believe, however, that the jury is likely to have been confused or misled by this testimony.... Black explained the bases for his opinions in sufficient detail to permit the jury to independently evaluate his conclusions.... Finally, the court instructed the jury that it was free to entirely disregard an expert's opinion 'if

you should conclude that the reasons given in support of the opinion are not sound....' We do not believe that the jury 'was prevailed upon to abdicate its function or responsibility for reaching an independent judgment on the ultimate issues.' *Frase v. Henry*, 444 F.2d 1228, 1231 (10th Cir.1971).

817 F.2d at 1459.

We have carefully examined Chapman's trial testimony and we agree with plaintiff that Chapman did render opinions in certain instances which indicated to the jury the precise result the jurors should reach based on the evidence. For example, Chapman testified that: he had heard no evidence that persuaded him that the police officers intended to establish a roadblock or that they positioned their automobiles to accomplish a roadblock (R., Vol. X, pp. 1517–18); he attributed the motorcycle striking Officer Parks' patrol car to "extraordinary disorientation" due perhaps to an injury and "suffering the effects of alcohol and not really knowing what he was doing" (*id.* at 1519); he did not believe that defendant Parks had rolled Lawrence McEwen back and forth or used excessive force as testified by others (*id.* at 1522); he did not hesitate to agree with the police board's administrative determination that Officer Parks should not be subject to any disciplinary action arising out of his encounter with the Lawrence McEwen motorcycle, etc. (*id.* at 1527) and this latter opinion was based in part on the credibility of witnesses. *Id.*

However, no objections were lodged by plaintiff to any of the above-referenced testimony of Chapman. Arguably, his testimony was proper under Rules 702 and 704, Fed.R.Evid., 28 U.S.C.A. Furthermore, the trial court's cautionary instruction to the jury was explicit, full and complete in advising the jury that matters of common knowledge, credibility and fact findings were within the exclusive domain of the jury. No plain error occurred in the admission of Chapman's testimony.

## II.

Plaintiff argues that the trial court erred in permitting improper impeachment of plaintiff's witness, Jamie Hall.

As heretofore observed, much of the dispute of fact involved in this case centered on the testimony of witnesses relative to what occurred or was said at the scene of the collision between the motorcycle and the patrol vehicle. One of the plaintiff's witnesses was Jamie Hall, age 23, who saw the collision.

Hall and others with him observed Lawrence McEwen's motorcycle make a wide turn to the north on Stubbeman and upset into a ditch. Hall testified that: he saw Lawrence McEwen pick up the motorcycle from the ditch, turn it around heading south on Stubbeman, and, with "three hops," head the motorcycle southward toward the patrol vehicle; the patrol car had already backed up and was facing toward the motorcycle; as the motorcycle proceeded down Stubbeman, he saw the patrol car pull in front of and collide with the motorcycle; the police car was moving north but at an angle with the motorcycle at the point of collision; he observed Officer Parks get out of the police car, pull his gun, stick the gun in Lawrence McEwen's face and ask McEwen whether "he'd like him to put him out of his misery;" he observed Officer Parks roll McEwen over, put handcuffs on him and roll him over again; after another police officer arrived at the scene, Hall gave him the fictitious name of David Fields because he was intimidated due to past experiences and what could happen in the future involving Officer Parks; Hall was arrested by Officer Parks following the time he gave a deposition in this case; and when Officer Parks booked him, Officer Parks said that "he owed me one, or I owed him one." (R., Vol. VIII, pp. 1190–96).

On cross-examination, Hall testified, without objection, that on the evening of the collision he had given an improper name and address, that on prior occasions he had gone by other aliases, and that he had been drinking in a nightclub on the night of the collision even though he was underage. *Id.* at 1197–98. Defense counsel then inquired of Hall relative to the

traffic offense he had said worried him. An objection was lodged that it was improper to explore the details of the charge in that it would create unreasonable prejudice under Rule 403, Fed.R.Evid., 28 U.S. C.A. *Id.* at 1198–99. The objection was overruled following an in-chambers hearing where the court ruled that inquiry into the bench warrant and Hall's use of an alias was proper, given that plaintiff opened the door on these issues. *Id.* at pp. 1199–1201.

Thereafter, upon further cross-examination, the following colloquy occurred, without objection:

Q. (By Mr. Collins): Mr. Hall the reason you did not give a correct name that night was not because you were intimidated by Mr. Parks, it was because you had an outstanding bench warrant out for your arrest, did you not?

A. True.

Q. And that—

A. That's part of the reason.

Q. And that stemmed from a DUI offense that you had been cited on and didn't show up in court, did you?

A. True.

Q. And the officer had—and the court had every right to issue the bench warrant, did they not?

A. Yes. They did.

Q. And it was outstanding.

A. Yes, it was.

Q. Now, this other incident that I think Mr. Hammons brought up was that after your deposition that you were arrested, is that not correct?

A. That's correct.

*Id.* at 1203–04.

Mr. Hall also acknowledged that sometime between August of 1986 and the date of his arrest in February, 1989, another bench warrant had been issued for his arrest on bogus check charges. *Id.* at 1204. He also testified that he had used the alias of Jamie Fields.

At the conclusion of Hall's cross-examination, the trial court instructed the jury that evidence of the bench warrants was admitted to permit the defendants to show why the witness was arrested by Officer Parks and to speak to Hall's credibility and veracity as a witness as it relates to a case where the City of Norman and its police officers are defendants. *Id.* at 1210–11.

Plaintiff also contends that defense counsel was improperly permitted to question witness Hall about whether he had used illegal drugs on the evening of the collision and inquiries about his drinking habits. No objections were lodged to this line of cross-examination.

■ We hold that the trial court did not abuse its discretion in allowing the aforesaid cross-examination of witness Jamie Hall. *See Fox v. Mazda Corp. of America, supra; United States v. Heath,* 580 F.2d 1011 (10th Cir.1978), *cert. denied,* 439 U.S. 1075, 99 S.Ct. 850, 59 L.Ed.2d 42 (1979). Plaintiff "opened the door" and invited cross-examination relative to Hall's use of the alias, his reason for using it, his intimidation by Officer Parks, his use of alcohol, and his fear of reprisals. A clear implication flowed from Hall's testimony that Officer Parks was "out to get" Hall because of his deposition testimony given in the instant case in January, 1989. The reasons for his use of the alias and the questions relative to the bench warrants were probative of matters directly or inferentially developed during Hall's direct examination by plaintiff's counsel. Furthermore, no contemporaneous objections were lodged during Hall's cross-examination. This court will generally not address issues that were not raised and ruled upon by the district court. *Farmers Ins. Co., Inc. v. Hubbard,* 869 F.2d 565 (10th Cir.1989). Finally, we hold that the trial court's carefully crafted cautionary instruction to the jury clearly pinpointed that the evidence on the bench warrants was admitted only to the extent that it bore on Hall's credibility and veracity. We hold that this line of cross-examination was in nowise "plain error" affecting the substantial right of the plaintiff. *Big Horn Coal Co. v. Commonwealth Edison Co.,* 852 F.2d 1259, 1270–71 (10th Cir.1988); *Bannister v. Town of Noble, Okla., supra; K–B Trucking Co. v. Riss Intern. Corp.,* 763 F.2d 1148, 1154–55, n. 8 (10th Cir.1985).

## III.

Plaintiff urges reversal because of the trial court's order overruling plaintiff's objection to testimony by Officer Robert W. Post of the Norman Police Department relative to Lawrence McEwen's .11 blood alcohol level on the night of the collision.

Prior to trial, plaintiff filed a Motion in Limine and supporting brief to exclude any reference at trial to the fact that decedent Lawrence McEwen had a post mortem blood alcohol reading of .11. Plaintiff argued that such evidence would be highly prejudicial and irrelevant to any issue in the case. (See Brief on Motion in Limine, Vol. I, Tab 78). Our record does not contain any pre-trial order of the district court on this motion.

At trial, plaintiff had the deposition of Doctor Chai S. Choy, a forensic pathologist, Office of the Chief Medical Examiner of the State of Oklahoma, admitted into evidence. (R., Vol. VI, pp. 846–52). Dr. Choy testified that the legal limit for classification of one driving under the influence in Oklahoma is .10. *Id.* at 851. When asked whether, as a medical doctor, he had an opinion, based upon a reasonable medical certainty, that a person with a ethyl alcohol limit of .11 would be affected in his driving ability, Dr. Choy responded, "I don't know." *Id.* at 851–52.

Thereafter, the following colloquy occurred:

MR. HAMMONS (Counsel for plaintiff): Your Honor, my record's just very brief.

I had filed a Motion in Limine on the exclusion of the blood alcohol content on the basis that it was unduly prejudicial.

THE COURT: Yes.

MR. HAMMONS: My argument was simply that the mention of alcohol is highly prejudicial. It is like sounding a bell; once it's done, you cannot unring the bell. As a result, I did a Motion in Limine and advised the Court that I did not think I could preserve that record by making an objection at opening statement or during the time the evidence was first offered because that would be something, if it were going to come in, I

would have to address in opening statement somewhat also.

My argument on admissibility was that there was not sufficient evidence to tie the consumption of alcohol, which admittedly was in existence, to a cause of the collision in this case, and that I felt, therefore, that the prejudicial impact of the evidence outweighed any of its proper probative purposes. . . .

THE COURT: . . . lest there be any misunderstanding about it on the record, you did make a timely objection, properly did so, argued it effectively, and my considered judgment under all of the circumstances of this case, as sensitive as that subject is, always is, that with the testimony that we expected then and, indeed, have now had, that the probative value of it under these circumstances, was such that it should be admitted under all the standards that we've all understood and discussed previously.

But your objection was certainly made, it fully protects you in that regard, if necessary, on appeal.

*Id.* at 868–70.

Plaintiff also called as a witness Officer Post, an accident reconstructionist and investigator for Norman. In the course of cross-examination, Post was asked whether he had obtained training in alcohol and how alcohol affects driving habits. He responded that he was a breathalyzer operator and that he had received training in testing individuals for alcohol influence. (R., Vol. III, p. 245). Thereafter, in chambers, counsel for plaintiff objected to any testimony from Officer Post relative to Lawrence McEwen's blood alcohol level at the time of the collision, based on surprise. Counsel for plaintiff argued that Officer Post had never been identified by defendants as an expert with respect to alcohol consumption or the effects of alcohol consumption on the operation of motor vehicles. *Id.* at 246. The court observed that the pre-trial order did not relate to what the various witnesses who had been deposed would testify to in that it simply showed that they had been "deposed" and that this was agreeable to the parties. *Id.* at 248. The trial court

then observed that at a pre-trial conference a day or two prior to trial, the court was called upon to rule on the issue of admitting the .11 blood alcohol report on decedent Lawrence McEwen, which is above the .10 Driving Under the Influence (DUI) level, and determined that such evidence had obvious probative value in determining the cause of the collision. The court overruled plaintiff's objection. *Id.* at 249–52.

We note that the trial court was understandably upset to ascertain that the pretrial order (which is not part of the record on appeal) did not indicate what any of the witnesses who had been deposed would testify to (under the "summary" caption, apparently only the word "deposed" appeared). The court nevertheless overruled plaintiff's objection and observed:

> But there's no question but this officer (Post) is a qualified person in that respect, it is already in evidence that the blood alcohol is .11, and the issue in this case is what happened at that collision, and I believe the jury should have the benefit and the defendant should have the opportunity to ask their expert his opinion on it. It can be argued and discredited, perhaps, but it's just too important a part of this case and was obviously an important issue from the outset, and the case is old enough that why it hasn't been developed in that respect before I don't know.
>
> But, it's unfortunate, and I will tell you that I will not look forward to anymore problems in regard to any witness for which the summary of testimony is simply the word 'deposed.' I don't expect that to come up again, and I will not approve a pretrial order hereafter that departs from our required form in that respect.
>
> So the objection is overruled....

*Id.* at 252.

Thereafter, Officer Post testified that Lawrence McEwen's blood alcohol concentration on the night of the collision was .11; under Oklahoma law .10 is DUI; in his opinion, the alcohol consumed by Lawrence McEwen was a contributing factor to the accident; he believed that Lawrence McEwen's consumption of alcohol affected his reaction time and balance; and Lawrence McEwen was "out of control" when his motorcycle struck the patrol vehicle. *Id.* at 276–78.

On appeal, plaintiff again argues that Lawrence McEwen's blood alcohol level of .11, lacking competent medical evidence of its effect on his ability to drive, was unfairly presented through "surprise" witness Officer Robert Post. However, plaintiff took a discovery deposition of Officer Post before trial knowing that he was defendant City of Norman's chief investigator and accident reconstruction expert. Plaintiff failed during the deposition to ask Post any questions on whether alcohol was a factor in the collision. Further, it was plaintiff who called Officer Post as a witness at trial. As heretofore noted, the pre-trial order simply listed Officer Post, under summary of testimony, as "deposed."

Thus, we reject, just as did the trial court, plaintiff's objection on the basis of surprise. Furthermore, we agree with the trial court's determination that the evidence of Lawrence McEwen's blood alcohol content of .11 on the night of the collision was relevant and that its probative value outweighed any unfair prejudice under Rule 403, Fed.R.Evid., 28 U.S.C.A.

Officer Post testified to the effect of alcohol impairment on a driver in relation to judgment, control and balance and slowed reaction time. *Id.* at 276–78. This evidence did not tend to confuse or mislead the jury; rather, it assisted the jury in determining the cause of the collision. It was both relevant and material to the defense. The district court did not abuse its discretion in admitting Officer Post's challenged testimony. *Marshall v. El Paso Natural Gas Co.*, 874 F.2d 1373 (10 Cir. 1989); *Fox v. Mazda Corp., supra.* Here, the probative value of the blood alcohol content certainly outweighed the danger of unfair prejudice in the context of this case. The "unfair prejudice" stated in Rule 403 cannot be equated with testimony which is simply unfavorable to a party. It must be unfair in the sense that it would be mis-

leading and not aid and assist the jury in making a material determination in the case.

### IV.

Plaintiff argues that he was prejudiced when the trial court allowed counsel for both defendants to examine witnesses and argue to the jury.

 Plaintiff points to his "Plaintiff's Response to Defendant's Application to Substitute Counsel," Docket Item 100, to show that he "recognized and objected to this strategy." (Brief of Appellant, p. 26). The difficulty is that plaintiff *did not* order up Docket Item 100, Vol. I, as part of the record on appeal. Under these circumstances, we can only speculate relative to plaintiff's grounds and contentions. Further, we can only speculate that docket Item 101 denied the objection or objections lodged by plaintiff because it, too, was not ordered up by plaintiff as part of the record on appeal. Furthermore, the parties do not refer us to any part of the trial transcript relating to this argument.

Rules of the United States Court of Appeals for the Tenth Circuit, effective January 1, 1989, provide, *inter alia*, that the appellant shall file in the court of appeals an original and one copy of a designation of record upon filing appellant's principal brief (Rule 10.2.5); and when an appeal is based upon a challenge to any ruling or order, a copy of pages of the reporter's transcript at which the ruling or order and any necessary objection are recorded must be included (Rule 10.2.3). Here, plaintiff failed to follow either of these rules. Thus, plaintiff has failed to certify an adequate record on appeal which would provide a basis for review whether the district court abused its discretion in denying plaintiff's motion to disqualify counsel. *United States v. Bolton*, 905 F.2d 319 (10th Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 683, 112 L.Ed.2d 674 (1991).

Generally, a party may not assign error on appeal unless he objects thereto, stating distinctly the matter to which he objects and the grounds therefore, *Prebble v. Brodrick,* 535 F.2d 605 (10th Cir.1976), and designates that part of the district court proceeding relevant thereto for appellate review. *Turnbull v. Wilcken,* 893 F.2d 256 (10th Cir.1990). Failure to do so requires our holding that plaintiff did not meet his burden of proving that the finding of the district court was clearly erroneous or that its ruling constituted an abuse of discretion. *Id.* This is consistent with our rule that the court of appeals generally will not address issues which were not considered and ruled upon by the district court. *Burnette v. Dresser Industries, Inc.,* 849 F.2d 1277 (10th Cir.1988).

Even had plaintiff preserved this issue on appeal, we would hold that plaintiff has not demonstrated trial court error. In *United States v. Bolton, supra,* we held that a district court decision on a motion to disqualify counsel is reviewed for an abuse of discretion, citing to *E.E.O.C. v. Orson H. Gygi Co.,* 749 F.2d 620, 621 (10th Cir. 1984). No such abuse of discretion is evident here.

### V.

Plaintiff contends that the court's instructions given at defendants' request on the propriety of a high-speed chase and the removal of debris from the road were prejudicial to plaintiff because they were on non-issues at trial.

Plaintiff states that plaintiff never challenged the pursuit of Lawrence McEwen, but rather and only challenged the use of the rolling roadblock to cut off his motorcycle (Brief of Appellant, p. 27). Similarly, plaintiff contends that removal of debris from the roadway went to no material issue. *Id.* at 28.

 In the course of her direct testimony, Mrs. Cecilia McEwen, mother of decedent Lawrence McEwen, stated that shortly after her son's death she visited with Norman Police Chief Cary in his office. (R., Vol. III, p. 141). She inquired why the Norman police undertook pursuit of the motorcycle instead of just taking his "tag number" down and simply follow the motorcycle home or phone her the next day so that she could have presented Lawrence McEwen if requested. *Id.* at 142–43. Dur-

ing her testimony, Mrs. McEwen also highlighted the fact that her son had committed only a misdemeanor, inferentially discrediting the police policy of pursuing vehicles violating speed limits.

The trial court's challenged instruction given on police pursuit was:

You are instructed that law enforcement officers are entitled to pursue traffic offenders even when such pursuits involve high speeds. In this case, the officers were entitled to pursue Lawrence McEwen since he had violated the traffic laws of the City of Norman.

(R., Vol. X, p. 1633).

Plaintiff objected to both of the challenged instructions "[o]n the basis that they did not relate to the triable issues within the case." *Id.* at 1646–47. The objection was overruled. *Id.*

We hold that in light of the testimony elicited by plaintiff from his witness, Mrs. McEwen, the trial court did not err in giving the instruction on police pursuit. We must consider the instruction in the context of the case presented. Furthermore, "[i]t is elementary that instructions must be considered as a whole and particular instructions ... are to be taken in the framework of the entire charge." *Marshall v. Ford Motor Company*, 446 F.2d 712, 715 (10th Cir.1971). In reviewing plaintiff's allegations of error, we must consider the instructions given as whole, *McGrath v. Wallace Murray Corporation*, 496 F.2d 299, 301 (10th Cir.1974), to determine whether the instructions convey correct statements of the applicable law. *Perrell v. Financeamerica Corp.*, 726 F.2d 654, 656 (10th Cir.1984). In the instant case, the trial court's carefully crafted instructions, taken as a whole, did convey the correct statements of applicable law to the jury.

■ Plaintiff also challenged the following instruction, again on the basis that it did not relate to any triable issue in the case:

You're further instructed that the statutes of the State of Oklahoma provide that:

Any person removing a wrecked or damaged vehicle from a highway shall remove any glass or other injurious substance dropped upon the highway from such vehicle.

(R., Vol. X, p. 1633).

Plaintiff argues that the instruction on removal of debris from the roadway went to no material issue, but only served to bolster the credibility of the Norman police officers. (Brief of Appellant, p. 28). This contention is without merit.

■ In the course of direct examination, Sergeant Louis Schultz, patrol supervisor and investigator, Norman Police Department, testified that certain debris was present at the scene of the collision as reflected in photographs taken by Sergeant Moody but that the debris had been removed before photographs at the scene were later taken by Sergeant Post when a wrecker crew was present. (R., Vol. IX, pp. 1325–27). Thereafter, Sergeant Gerald Roy Moody of the Norman Police Department testified that he took photographs at the scene of the collision shortly after the accident when debris was visible and that the debris was later swept up. *Id.* at 1338–42.

In his cross-examination of Sergeant Moody, counsel for plaintiff attempted to impeach the testimony of Sergeant Robert W. Post, a traffic accident specialist with the Norman Police Department. (Appellant's Brief, p. 28). Sergeant Moody had previously testified that he had taken photographs at the scene as part of his investigative report. (R., Vol. III, p. 181). He testified that nothing had been moved before his photographs were taken and that the photographs reflected that which existed after the collision. *Id.* at 230. However, plaintiff points out that this apparent inconsistency occurred "[b]ecause ... unknown to Post ... certain photographs were taken *prior* to his arrival, [and] Plaintiff was able to provide (among other things) that the accident area was swept clear of debris before Post started taking photographs." (Brief of Appellant, p. 28). Thus, by plaintiff's admission, there was no false testimony on the part of Sergeant

Post. He simply did not know that certain debris had been removed from the accident scene prior to the time he took photographs.

No prejudice resulted to plaintiff when the trial court instructed the jury on the law relative to the removal of the debris. In his closing argument to the jury, counsel for the plaintiff made full play upon the debris removal matter: "We look and see that the photographs, the color photographs, that are supposed to represent the accident condition scene exactly as it took place after the collision, have all the debris swept away from it." (R., Vol. X, p. 1592). This factor was used by counsel for plaintiff in arguing that the point of impact was not as depicted by Officer Post in his diagram because certain physical evidence "was not recorded." *Id.* at 1592–93. Thus, the debris instruction was relevant and proper.

## VI.

Plaintiff argues that the trial court erred in allowing the defendants to undertake in-court "dramatizations" of certain evidence. The record reflects that the trial court allowed, over objection, three very brief in-court demonstrations.

■ The first demonstration complained of occurred during the testimony of Jamie Hall. Two of plaintiff's witnesses, Hall and Terry Adams, testified that they saw defendant Officer Parks approach Lawrence McEwen following the collision with his gun drawn in his right hand and holding it to the head of Lawrence McEwen as Officer Parks stated, "Do you want me to put you out of your misery?" (R., Vol. VII, p. 952; Vol. VIII, pp. 1244–49). After Hall had acknowledged during cross-examination that in deposition testimony he had stated that Officer Parks had drawn his gun with his right hand, *id.* at 1244, counsel for Officer Parks requested permission of the court, out of the presence of the jury, to impeach witness Hall by having Officer Parks stand and demonstrate that he is left-handed by showing that his gun holster was located on the left side of his belt. *Id.* at 1248. Counsel for Officer

Parks had requested this in-court demonstration to show that Parks is left-handed. *Id.* at 1245. The only objection lodged by counsel for plaintiff was that it would be more appropriate to have Officer Parks testify during his "part of the case." *Id.* After the demonstration the trial court observed, "Well, I think there's no objection to it, there's no harm done." *Id.* at 1246. We agree.

■ Plaintiff also contends that error occurred when the court allowed reenactment of the "handcuffing process." (Appellant's Brief, p. 30). Plaintiff's witness Terry Adams testified that he saw defendant Officer Parks, after the collision, approach Lawrence McEwen with his gun drawn and grab McEwen "[b]y the shoulder and jerked him—he was on his stomach—and he jerked him over onto his back, and then flipped him back on his stomach, jerked him back over to the back, and flipped him over to his stomach—back to his stomach, and then put handcuffs on him." (R., Vol. VII, pp. 887–88). Plaintiff's witness Valerie Johnson stated that when she observed Lawrence McEwen he was face down, handcuffed, and that Officer Parks flipped him back and forth. *Id.* at 1060. Jamie Hall also testified that Officer Parks stuck his gun in Lawrence McEwen's face, asked him if he would like to be put out of his misery, handcuffed him, and rolled him over again and again. (R., Vol. VIII, p. 1192).

During the cross-examination of witness Valerie Johnson, counsel for defendant Officer Parks knelt down and the following colloquy occurred:

Q. Now, ma'am, am I correct, as I understand the position of Lawrence McEwen was—

MR. HAMMONS: Your Honor, I don't think counsel should act out his version of what took place.

THE COURT: It's a perfectly permissible demonstration technique if he wishes to use it.

Q. (By Mr. Manchester): As I understand, Ma'am, Lawrence McEwen was something in the position that I was—am

at this time, where I'm down on my hands and knees; is that correct?"

\* \* \* \* \* \*

A. He was laying face down.

Q. He was laying face down. Were his hands under him?

A. No, they were already behind his back [handcuffed].

(R., Vol. VII, pp. 1058–59).

The witness, Valerie Johnson, had directly disputed that Lawrence McEwen was in the kneeling position demonstrated by counsel. Thus, it is difficult to follow plaintiff's contention that plaintiff was prejudiced thereby. We must conclude that no prejudicial error occurred when the trial court allowed this demonstration.

The third demonstration complained of occurred during direct examination of Officer Parks. During a bench conference, counsel for defendant Parks requested that Parks be permitted to demonstrate the manner in which he had handcuffed Lawrence McEwen by actually handcuffing his counsel. (R., Vol. IV, p. 1451). Counsel for plaintiff objected on the ground that staged reenactments are notoriously unreliable, that Officer Parks was capable of describing what he did, and that the purpose was to dramatize, not to educate or inform. *Id.* at 1451–52. The trial court overruled plaintiff's objection:

THE COURT: A very important part of this case is what happened just after the impact, the question of reasonableness, the question of excessive force, perhaps even as a separate item of recovery. In any event, evidence of the intention of the officer in regard to the impact is critically important in the case.

I do not consider this type of demonstration to be dramatization as you have characterized it though I do not always permit this type of display; I think in this case the officer's entitled to show exactly what he did.

*Id.* at 1452. The demonstration which followed involved the use of a Mr. Lyons who took specific positions related by Officer Parks during the arrest-handcuffing procedure. *Id.* at 1458, 61.

Each of these demonstrations was, in effect, a defense mechanism for testing the knowledge and truthfulness of plaintiff's witnesses on important, relevant issues before the jury. Thus, the demonstrations were part of the defendants' cross-examination. Fed.R.Evid.; Rule 611, 28 U.S.C.A. provides, *inter alia:*

(a) Control by the court. The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth. . . .

(b) Scope of cross-examination. Cross examination should be limited to the subject matter of the direct and matters affecting the credibility of the witness.

The district court is vested with broad discretion in ruling on the relevancy of evidence, *United States v. Alexander,* 849 F.2d 1293 (10th Cir.1988), and in reviewing evidentiary ruling of the trial court, we may not reverse absent an abuse of discretion. *Graham v. Wyeth Laboratories,* 906 F.2d 1399, 1401 (10th Cir.1990); *Bannister v. Town of Noble, Okla., supra.*

The district court did not abuse its discretion in permitting the aforesaid limited demonstrations.

### VII.

Finally, plaintiff argues that the errors addressed in Propositions I through VI, taken together, and considered in the light of other alleged errors, require reversal on the basis of accumulated error. We disagree.

We have carefully considered each of plaintiff's additional contentions of trial court errors. These are complaints relative to the district court's evidentiary rulings. We hold that the district court did not abuse its discretion in that regard. In *United States v. Ortiz,* 804 F.2d 1161, 1164 n. 2 (10th Cir.1986), we held:

Under the abuse of discretion standard, a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court

made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances. When we apply the 'abuse of discretion' standard, we defer to the trial court's judgment because of its first-hand ability to view the witness or evidence and assess credibility and probative value.

We AFFIRM.