In re ANGELES CORPORATION, a California corporation; Angeles Funding Corporation, a California corporation; Angeles Real Estate Corporation, a California corporation; Angeles Leasing Corporation, a California corporation, Debtors.

Bankruptcy Nos. LA 93–25603–KM, LA 94–13411–KM, LA–94–15091–KM and LA 94–15093–KM.

United States Bankruptcy Court, C.D. California.

Feb. 24, 1995.

Stutman, Treister & Glatt, Los Angeles, CA, for debtors.

Buchalter, Nemer, Fields & Younger, Los Angeles, CA, for Creditors' Committee.

**OPINION ON MOTIONS OBJECTING TO CLAIMS FILED BY 6,977 LIMITED PARTNERS OF NONDEBTOR PARTNERSHIPS AND OPINION ON MOTION TO SUBORDINATE 6,977 CLAIMS FILED BY LIMITED PARTNERS**

KATHLEEN P. MARCH, Bankruptcy Judge.

**I. MOTIONS OF CREDITORS' COMMITTEE OBJECTING TO CLAIMS FILED IN ANGELES CORPORATION BANKRUPTCY CASE BY 7,000 PLUS PERSONS WHO PURCHASED LIMITED PARTNERSHIP INTERESTS IN 16 NONDEBTOR PARTNERSHIPS**

**A. BACKGROUND**

On May 3, 1993, Angeles Corporation (hereinafter "Debtor Angeles"), a publicly

traded company, filed a Chapter 11 bankruptcy case in this District. Debtor Angeles' is a holding company. Subsequently, three of Debtor Angeles wholly owned subsidiaries filed bankruptcy. These three additional debtors are Angeles Funding Corporation, Angeles Real Estate Corporation and Angeles Leasing Corporation. The four bankruptcy cases are jointly administered, but not substantively consolidated.

## B. MOTIONS OBJECTING TO CLAIMS

The first 32 motions on calendar for today, which are on calendar for continued hearing, are the motions brought by the Official Committee of Creditors holding Unsecured Claims (hereinafter "Creditors' Committee") of Debtor Angeles. These 32 motions object to 6,977 claims filed in the Angeles Corporation bankruptcy case by limited partners of some 16 partnerships. The 16 partnerships in issue are listed on Exhibit 1 to this Opinion. None of these 16 partnerships is a debtor in any of these four administratively consolidated bankruptcy cases. These 32 motions are brought in the Angeles Corporation bankruptcy case only, because the 6,977 of the claims being objected to are all filed in the Angeles Corporation bankruptcy case.

## C. GROUNDS ALLEGED IN MOTIONS

The Creditors' Committee objects to the 6,977 claims on the grounds that any claims by the limited partners of the 16 partnerships would lie only against entities *other* than Debtor Angeles. The objections argue that any claim by the limited partners of the 16 partnerships would lie only against the 16 partnerships themselves, or would lie against the general partners of the 16 partnerships. None of the 16 partnerships is a debtor in this case, and none of the general partners of the partnerships is a debtor in this case. In essence the objection to the 6,977 claims filed by limited partners is that the facts alleged in the claims *cannot* give rise to any claims against Debtor Angeles, but are limited to

claims against the 16 partnerships (none of which is Debtor Angeles) or the general partners of those 16 partnerships (none of which is Debtor Angeles).

The Creditors' Committee also argues that the limited partners lack standing to make claims for damage against the general partners, or on behalf of the partnerships, for damages arising from the mismanagement of the partnerships and other torts; that any right to recover for mismanagement or other torts would run only to the partnerships themselves, not to individual partners. This argument is discussed at Section I.E.9 infra of this Opinion.

## D. RULING

The Court *overrules* the Creditors' Committee's objection to 34 of the 6,977 claims filed by the limited partners; and *sustains* the objection as to the remaining 6,943 claims filed by the limited partners here objected to, as follows:

## E. ANALYSIS

34 of the 6,977 claims filed by limited partners allege various kinds of mismanagement, misconduct, fraud, breach of fiduciary duty and other wrongful acts by Debtor Angeles in relation to the 16 partnerships, damaging the limited partners of those partnerships. These 34 claims are the first 34 claims listed in Exhibit 2 to this Opinion.

### 1. Evidentiary Effect of Bankruptcy Rule 3001(f)

■ Pursuant to Federal Rules of Bankruptcy Procedure Rule 3001(f), claims which are properly executed and filed in accordance with the Rules are *prima facie* evidence of the validity and amount of the claim. [Bankruptcy Rule 3001(f): "Evidentiary Effect. A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."] Thus, the claims filed by the limited partners alleging mismanagement and other wrongdoing by Debtor Angeles in relation to the 16 partnerships constituted

*prima facie* evidence that such wrongdoing had occurred.

## 2. The Need for Countervailing Evidence

■ Consequently, the Creditors' Committee's objection to those claims could not properly be sustained against these claims unless the Creditors' Committee provided some admissible evidence to *rebut* the *prima facie* evidence of wrongdoing that the claims allege. As part of the original objection, the Creditors' Committee failed to present any evidence whatsoever to rebut such claims of wrongdoing. The Court continued the hearing on the objections to allow the Creditors' Committee an opportunity to present admissible evidence that Debtor Angeles had *not* committed wrongful acts in relation to the 16 partnerships alleged in the claims.

## 3. Movant's Attempt to Supply Countervailing Evidence

The Creditors' Committee responded to the Court's request for evidence by filing four declarations in support of the Creditors' Committee's objections, for today's continued hearing on the objections. These are the declarations of William Tuthill, Robert Goodman, Rachel Canon and Bruce Nii. These declarations are *insufficient* to disprove mismanagement and other wrong doing by Debtor Angeles in relation to the 16 partnerships at issue.

## 4. Analysis of Movant's Evidence

William Tuthill, President and Chief Executive Officer of Debtor Angeles, disclaims having done any "day-to-day" management of the limited partnerships in issue. (Tuthill Decl. paragraph 4) This begs the question, because people without day to day responsibility, but who are at the top of management and have decision making power can often mismanage much more successfully than subordinates who have day to day responsibility for management. Mr. Tuthill does not say in his declaration that he personally did not mismanage or commit the alleged bad acts. One inference to be drawn from this omission is that Mr. Tuthill didn't deny personal wrongdoing because he couldn't. Mr. Tuthill was also a director of Angeles. (Tuthill Decl. paragraph 3). Regarding his activities as a director, he states: "As a director, I did not personally participate in the management and operation of the Partnerships, or in the solicitation of partnership investments. All of the individuals who were directly involved with the solicitation of investors and management of the Partnerships are no longer associated with Debtor Angeles or any of its subsidiaries." (Tuthill Decl. paragraph 4). "Based upon the information regarding the Partnerships I reviewed as a director of Debtor Angeles, I do not believe that the Partnerships were mismanaged by Debtor Angeles (which did not manage the Partnerships) or by any of its subsidiaries...." (Tuthill Decl. paragraph 5). These passages are a bit too artful. They do not say whether Mr. Tuthill ever came across evidence of mismanagement by Debtor Angeles while carrying out his other capacities as President and Chief Executive Officer of Debtor Angeles.

It should also be noted that the Creditors' Committee, which is working jointly with Debtor Angeles in this case, did not present any declarations by the people Mr. Tuthill refers to as the people with day to day responsibility for management of the partnerships, to claim firsthand that there was no mismanagement by Debtor Angeles. True, the Tuthill declaration states that these persons are no longer employed by Debtor Angeles. However, there is no claim that Movant could not have procured these persons' declarations or deposition testimony on the issue of mismanagement. The inference to be drawn is that this evidence was not presented because it would be contrary to the position Movant is taking. The people with "day to day responsibility" may have mismanaged. Mr. Tuthill states his personal opinion that "I have no reason to believe that any employee of Debtor Angeles or its subsidiaries engaged in any misrepresentation ... or any other wrongful act ...". (Tuthill Decl. paragraph 5). However, this is inad-

missible as conclusion unsupported by a proper factual basis.

The three other declarations have similar deficiencies. Mr. Goodman, a newly hired financial adviser who has no firsthand knowledge of Debtor Angeles or the partnership whatsoever, merely declares that there was a recession. Mr. Nii, who has only been Vice President and Chief Financial Officer of the Debtor Angeles since April 1993 (the date bankruptcy was filed) does not claim lack of mismanagement in his declaration. Miss Cannon's declaration only addresses the marketing and sale of the limited partnership shares, not subsequent management of the partnerships.

### 5. Movant's Evidence and the Claims Filed by Limited Partners are Some Evidence Claims that Mismanagement/Misconduct May Lie Against Debtor Angeles

Based on the financial information regarding the 16 partnerships submitted as part of the herein objections, it appears that approximately $250 million of money invested by limited partners was lost from inception of the partnerships to the present. Each of these partnerships purchased real estate, usually with 40% equity and with 60% debt. Mr. Tuthill's and Mr. Goodman's explanation that there has been a recession is not a sufficient explanation for a loss of $250 million of investor's equity, which is substantially gone, based on the present fair market values of the properties. Additionally, several of the claims that were filed had attached to them documents from Debtor Angeles (which the court considers to be admissions of Debtor Angeles per Federal Evidence Rule 801(d)(2)) which reflect that Debtor Angeles *was* holding itself out to the limited partners as managing the partnerships in issue.

### 6. Movant's Evidence is Insufficient to Support Movant's Objection Regarding Claims Which Allege Misconduct

The four declarations submitted by Movant are insufficient to either rebut the evidentiary effect given the claims in issue by Bank-

ruptcy Rule 3001(f), or to shift the burden of going forward back to the claimants. Consequently, the Creditors' Committee's objections are *overruled* as to all claims which allege wrongdoing by Debtor Angeles. There are 34 such claims which allege wrongdoing by Debtor Angeles. These claims are all the claims listed on Exhibit 2 to this Opinion, except *not* the claims of Kenneth Wagner and Pamela Clere (the last 2 items on Exhibit 2). The claims of Wagner and Clere do not allege wrongful acts by Debtor Angeles.

### 7. Objection Sustained Regarding the Remaining 6,943 Claims, Which Do Not Allege Misconduct by Debtor Angeles

■ Unlike the 34 claims just discussed, the rest of the 6,977 claims filed by the limited partners to the 16 partnerships do *not* allege wrongdoing by Debtor Angeles. These 6,943 claims only allege that the claimants own limited partnership interests in the 16 nondebtor partnerships (except for the last two claims listed on Exhibit 2 to this Opinion, which allege "co-investor liability" and "secured claim" respectively, but do not allege *wrongdoing* by Debtor Angeles.) The Creditors' Committee's objections to the 6,943 claims are *sustained*. These 6,943 claims do not allege any tortious activity which would give rise to a claim against Debtor Angeles. The status of owning a limited partnership interest in a partnership which is not a debtor in this case gives rise to an interest in or possible claim against that entity, but not to an interest in or possible claim against Debtor Angeles.

### 8. What this Court is Not Ruling On

All 6,977 limited partners who filed the claims here in issue may have claims against the partnerships they bought their limited partnership interests in, and/or they may have claims against the general partners of those partnerships, and/or against entities who managed those partnerships other than Debtor Angeles. This Court's Orders on these 32 motions and herein Opinion rules only on claims against Debtor Angeles, not

on claims against any other person or entity whatsoever.

### 9. Movant's Argument that Limited Partners Lack Standing to Make Claims

As noted supra at section I.C. of this Opinion, Movant argues that even if Debtor Angeles did mismanage the partnerships, commit breach of fiduciary duty owed to the limited partners, or commit other torts in relation to running the partnerships, the limited partners are not entitled to file claims to recover such damages individually, that only the partnerships themselves have a cause of action for such mismanagement and other torts. This argument claims that under California state law (the 16 partnerships are California partnerships), "Any liability with respect to management of the Partnerships runs to each Partnership and not to the individual Limited Partners." (Creditors' Committee's Supplemental Memorandum, p. 18) and that "As a general rule, a limited partner may not bring a lawsuit on behalf of a limited partnership." (Creditors' Committee's Main Memorandum of Points and Authorities, p. 12). In short, Movant argues that the individual limited partners have no standing to bring suit against general partners who commit torts, that only the partnership can sue general partners committing torts, and that any recovery must go to the partnership, not to the individual limited partners.

■ This argument states the general rule, but carefully overlooks the exception to the general rule applicable here. It is correct that under California law, one partner must ordinarily enforce its rights against others by an equitable suit for dissolution and accounting, rather than an action for damages. 9 B.E. Witkin, Summary of California Law Partnership § 34 (9th ed. 1989).

■ However, California law recognizes several exceptions to this general rule. One of these exceptions, applicable here, is that a partner *can* bring an action for damages against another partner where the other partner is guilty of a tort, such as conversion of partnership assets. 9 B.E. Witkin, Summary of California Law Partnership § 36 (9th ed. 1989). California case law has long so held. *Prince v. Harting*, 177 Cal.App.2d 720, 735–36, 2 Cal.Rptr. 545, 554–55 (Cal. Dist.Ct.App.1960) (under California law, a partner may sue another partner for damages where the later partner has committed breach of fiduciary duty); *Laughlin v. Haberfelde*, 72 Cal.App.2d 780, 788–89, 165 P.2d 544 (Cal.Dist.Ct.App.1946) (recognizing that under California law, one partner can sue another directly for damages where the second partner has committed conversion, fraud, or other torts).

■ Since California state law would have allowed individual limited partners to file suit against the general partners for the torts here alleged, individual partners have standing to file claims in this bankruptcy case for those same damages. (See 11 U.S.C. § 101(5), definition of "claim", which states that " 'claim' means—right to payment, whether or not such right is reduced to judgment …").

## II. JOINT MOTION OF DEBTOR ANGELES AND CREDITORS' COMMITTEE TO SUBORDINATE 6,977 CLAIMS FILED BY LIMITED PARTNERS TO EQUITY POSITION PURSUANT TO 11 U.S.C. § 510(b)

### A. BACKGROUND

The 33rd Motion on calendar today, also concerning the 6,977 claims filed by limited partners, is the joint motion of Debtor Angeles and the Creditors' Committee. This motion is brought pursuant to 11 U.S.C. § 510(b). This motion is brought only in the Debtor Angeles' bankruptcy case, because the claim's sought to be subordinated are all filed in Debtor Angeles' case. This motion seeks to *subordinate* all 6,977 claims filed by the limited partners to an equity class in the Chapter 11 plan proposed jointly by Debtor Angeles and the Creditors' Committee.

### B. RULING

This motion is moot as to the 6,943 claims as to which the Court sustained the Commit-

tees' objection. Those 6,943 claims have been disallowed, so they no longer exist to be classified in any class of the proposed plan. Regarding the remaining 34 claims, which were *not* disallowed pursuant to the Creditors' Committee's objection, the Court denies the motion to subordinate as to 31 of the 34 claims, and grants the motion to subordinate as to 3 of the 34 claims, as follows:

## C. ANALYSIS

As discussed supra herein, the 34 claims which were not disallowed on the Creditors' Committee's objection each allege one or more kinds of mismanagement, misconduct, fraud, breach of fiduciary duty or other wrongful acts by Debtor Angeles in relation to the 16 partnerships, damaging the limited partners.

Such claims are tort claims. Such tort claims are general unsecured claims which must be classified in class 5 of the Plan, (the class for general unsecured claims not agreeing to or benefitting from agreements for different treatment), unless these claims are subject to subordination to an equity class, pursuant to 11 U.S.C. § 510(b), as being claims "arising from" the purchase or sale of a security.

### 1. Language of Section 510(b)

Section 510(b) provides:

"(b) For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security. . . . shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock." 11 U.S.C. § 510(b).

### 2. Section 510(b) Requires Subordination of Claims Alleging Misrepresentations to Induce Purchase

■ Clearly, a claim of alleged misrepresentations to induce people to buy their limit-ed partnership interests would be a claim which "arises from" the purchase of the security. Thus, all claims alleging misrepresentations to induce purchase of the limited partnership interests are properly subordinated to an equity class pursuant to Section 510(b). Three of the 34 claims—those of Raymond Lewis, Alexander Ramm and Robert Carter—allege misconduct to induce *purchase* of the limited partnership shares. These 3 claims are therefore properly subordinated, per Section 510(b). (These 3 claims are the first 3 claims listed in Exhibit 2 to this Opinion.)

### 3. Harder Question—Required Treatment of Claims Arising from Bad Acts Which Occurred Subsequent to the Purchase of the Securities

The more challenging question is whether or not the 31 claims which allege fraud, or mismanagement, or breach of fiduciary duty by Debtor Angeles in managing the partnerships, and claims alleging other wrongful acts by Debtor Angeles in relation to the partnerships—where the alleged wrongful acts by Debtor Angeles would have occurred *after* the purchase of the limited partnership interests—are also claims "arising from the purchase or sale" of the limited partnership interests.

### 4. Interpretation of Section 510(b) a Question of Law

This is a question of law as to how Section 510(b) of the Bankruptcy Code is properly interpreted. The Court rules that claims alleging misconduct, breach of fiduciary duty, or wrongful acts by Debtor Angeles in managing the partnerships *subsequent* to the purchase of the limited partnership interests are *not* acts "arising from the purchase or sale" of the limited partnership interests, as those terms are used in Section 510(b). Thus, such claims are *not* subject to subordination from being general unsecured (tort) claims to being placed in an equity holder class.

■ The case on Section 510(b) most directly on point is the District Court's opinion

in *In re Amarex, Inc.*, which movants try unsuccessfully to distinguish. *In re Amarex, Inc.*, 78 B.R. 605 (D.C.W.D.Okla.1987), *reversing In re Amarex, Inc.*, 53 B.R. 888 (Bankr.W.D.Okla.1985). The *Amarex* District Court opinion directly considers the question of the scope of the words "arising from purchase ... of a security" in 11 U.S.C. § 510(b). The District Court opinion concludes that fraud or other wrongful conduct occurring *subsequent* to the purchase of the security is *not* a claim "arising from" the purchase of the security. The District Court reversed the Bankruptcy Court for holding to the contrary. The District Court noted the bankruptcy court erred by using a "but for" test as the definition of "arising from". The District Court's opinion is the correct interpretation of the "arising from" language in 11 U.S.C. § 510(b). Therefore, this Court adopts the *Amarex* District Court's interpretation of Section 510(b).

Everyone who took a contracts class in law school knows that the words "arising from" are broad. However, these words are not limitless. If Congress had wanted to subordinate *all* claims of security holders to an equity position, regardless of the source of the claim, Congress would have worded Section 510(b) to say: "All claims made by security holders, regardless of the source of claim, shall be subordinated to an equity class ..." However, Bankruptcy Code Section 510(b) does *not* say this. Thus, Section 510(b)'s subordination of claims "arising from the sale or purchase of a security" must mean subordinating *less* than *every* claim of a security holder, regardless of how that claim arises.

The interpretation of "arising from ..." in the District Court *Amarex* opinion is the interpretation that is most consistent with the wording of Section 510(b) used by Congress. This interpretation is also consistent with the legislative history of Section 510(b) and other authority cited to in the District Court *Amarex* opinion.

█ The limited partners who allege mismanagement and breach of fiduciary duty by Debtor Angeles in operating and managing the partnerships after the limited partners purchased their partnership interests did not suffer damage "arising from" the purchase of their equity positions. They suffered damage "arising from" the independent *intervening torts* of negligent management, breach of fiduciary duty, etc.

Movant's brief cites four Ninth Circuit cases. However, none of these Ninth Circuit cases decides the specific question here facing the court, of whether or not tort claims arising from conduct subsequent to the purchase of securities are subordinated to an equity position by Section 510(b).

As movants concede, the Ninth Circuit Court of Appeals expressly *declined* to decide this very issue in *Falcon Capital Corp. Shareholders v. Osborne (In re THC Financial Corp.)*, 679 F.2d 784 (9th Cir.1982).

In *Kira v. Holiday Mart, Inc. (In re Holiday Mart, Inc.)*, 715 F.2d 430 (9th Cir.1983), Section 510(b) is not even the subject of the opinion, and is cited to only in vague dictum, not on the issue here raised.

Movant's cite *Christian Life Center Litigation Defense Committee v. Silva (In re Christian Life Center)*, 821 F.2d 1370 (9th Cir.1987), as being authority for a broader reading of "arising from ..." in Section 510(b), but that case is not on point either. *Christian Life Center* involved the question of whether the indemnity claims of officers of a corporate debtor, seeking to be indemnified for litigation costs, could be subordinated using Section 510(b). It clearly does not directly address or rule on the question of whether or not arising from includes misconduct occurring subsequent to the purchase of the security in question.

Finally, movants rely on *In re U.S. Financial, Inc.*, 648 F.2d 515 (9th Cir.1980). In that case the shareholders' claims were subordinated per Section 510(b) because the

shareholders had been defrauded in relation to the *purchase* of their shares, and thus were clearly within the "arising from" language of Section 510(b). Moreover, no Supreme Court decisions or other Circuit level opinions were found by this Court on this precise issue.

Movants cite to language in cases stating that subordinating the claims of equity-holders to those of unsecured creditors protects the absolute priority rule and carries out the expectations of all parties that creditors would be paid before equity-holders. This begs the question here facing the court. True, it is the expectation of equity-holders that they will not derive value from their equity shares until creditors have been paid. However, persons buying stock or partnership interests do not have a "reasonable expectation" of becoming the victims of an independent intervening tort—the mismanagement of the business by its managers, or the breach of fiduciary duty owed to limited partners by the general partners—merely because they have become equity-holders, any more than a person crossing a street in a crosswalk has a "reasonable expectation" of becoming the victim of some careless driver's vehicular negligence. The hypothetical person hit by the Debtor's delivery vehicle would have a tort claim in the general unsecured creditor class. So should the person "hit" by a breach of fiduciary duty or mismanagement, which are no less independent torts than is vehicular negligence.

### 5. Result Regarding Claims Here in Issue

Using the interpretation of Section 510(b) stated in *Amarex*, the result on Movant's Section 510(b) motion is as follows:

(1) the 3 claims which allege misrepresentations to induce purchase of the limited partnership interests are claims arising from purchase of security and are properly subordinated (these are the claims of Levins, Ramm and Carter, which are the first 3 claims listed on Exhibit 2 to this Opinion).

(2) the 31 claims which allege mismanagement of the partnerships by the Debtor Angeles, breach of fiduciary duty by the Debtor Angeles in handling the partnerships, or other wrongful acts by the Debtor Angeles, occurring subsequent to the purchase of the limited partnership interests, are *not* claims "arising from" the purchase or sale of the limited partnership interests, and thus *cannot* be subordinated pursuant to Section 510(b). (These claims are all claims listed on Exhibit 2, except for the claims of Levins, Ramm and Carter, and except for the claims of Wagner and Clere.)

(3) the motion to subordinate is moot as to the remaining 6,943 claims, which allege only ownership of a limited partnership interest in the nondebtor partnership, because these claims have been disallowed per Part I of this Opinion and therefore no longer exist to be classified in any class of the proposed Debtor Angeles plan. However, if it were to be assumed *arguendo* that such claims were claims against Debtor Angeles, such claims would be properly subordinated to an equity class pursuant to Section 510(b), because such claims are based solely on the status of having purchased a limited partnership share in an affiliate of Debtor Angeles.

### 6. Additional 3,000 plus Claims

In addition to the 6,977 claims here ruled on, these are over 3,000 additional claims filed in Debtor Angeles' case by additional limited partners of nondebtor partnerships. The Creditors' Committee has brought additional motions objecting to these additional 3,000 plus claims. These objections are set for hearing on January 27, 1995 and have not yet been ruled on by the Court. Some of these 3,000 claims allege wrongdoing by Debtor Angeles, subsequent to the purchase of the limited partnership interests, similar to the claims of wrongdoing made in the 31 claims just discussed at II.C.5.(2) supra.

The Court has not yet reviewed the 3,000 plus additional claims or the Creditors' Committee's objections to those claims. Any claims set for hearing the upcoming January 27, 1995 hearing date which allege mismanagement, breach fiduciary duty, or other misconduct by Debtor Angeles in relating to nondebtor limited partnerships, occurring *after* the purchase of the limited partnership interests, *cannot* be subordinated to an equity class pursuant to 11 U.S.C. § 510(b).

Any such claims alleging wrongdoing by Debtor Angeles subsequent to purchase, plus the 31 claims discussed supra at II.C.5(a), must be classified in the class for general unsecured creditors not agreeing to, or benefitting from agreements for, different treatment. The class for general unsecured creditors not agreeing to or benefitting from agreements for different treatment is Class 5 of the Chapter 11 plan proposed jointly by the Debtor Angeles and the Creditors' Committee. These claims must be classified in Class 5 of the proposed Chapter 11 plan for Debtor Angeles.

## III. CONCLUSION

Proposed Orders on each of the 33 motions here decided (33 orders total), consistent with this Opinion, are ordered to be lodged by movants forthwith. This Opinion constitutes the Court's findings of fact and conclusions of law on each of the 33 motions.

### EXHIBIT 1

### LIST OF PARTNERSHIPS

Angeles Park Communities, LTD

Angeles Opportunity Properties, LTD

Angeles Income Properties, LTD II

Angeles Income Properties, LTD III

Angeles Income Properties, LTD IV

Angeles Income Properties, LTD V

Angeles Income Properties, LTD 6

Angeles Partners VII

Angeles Partners VIII

Angeles Partners IX

Angeles Partners X

Angeles Partners XI

Angeles Partners XII

Angeles Partners XIV

Angeles Partners XV

Angeles Partners 16

### EXHIBIT 2

### *ANGELES CLAIMS OCTOBER 21 & 28, 1994*

*MISREPRESENTATIONS IN SELLING LIMITED PARTNERSHIP INTERESTS OBJECTION OVERRULED.*

*PUT CLAIM SUBORDINATED PER 510(B); CLAIM ORDERED SUBORDINATED PER 510(b).*

Levins, Raymond. Angeles Partners XV. Claim # 6067; Cal # 112. Nondisclosure of risk.

Ramm, Alexander. Angels Income Properties LTD III. Claim # 3445; Cal # 310. Misrepresentation by broker.

Carter, Robert. Angeles Income Properties LTD IV. Claim # 1319; Cal # 65. Misrepresentation by broker.

### MISMANAGEMENT

*OBJECTION OVERRULED.*

*PUT CLAIMS IN CLASS 5B; ANGELES HAS NOT SHOWN THAT THE ACTIVITY WAS LIMITED TO THE SALE OR PURCHASE.*

Belles, A. Gilbert. Angeles Park Communities, LTD.
Claim # 1494; Cal # 9.
Mismanaged and Fraud.

Parker, Linwood. Angeles Income Properties LTD V.
Claim # 6311; Cal # 243.
Mismanagement and misappropriation of sale proceeds.

Baermann, Christine. Angeles Partners IX.
Claim # 4280; Cal # 9.
Mismanagement and fraud.

Dick, Betty. Angeles Partners XI.
Claim # 6770; Cal # 124.
Mismanagement.

Smith, Gregory. Angeles Partners XIV.
Claim # 1948; Cal # 511.
Mismanagement and misrepresentation.

Baffaro, Louis. Angeles Partners XIV.
Claim # 3871; Cal # 13.
Mismanagement.

Freeman, Ernest. Angeles Partners XI (Set B).
Claim # 10755; Cal # 64.
Mismanagement.

Hoag, Ronald. Angeles Partners XV.
Claim # 4081; Cal # 83.
Mismanagement and Angeles was general partner.

Howell, Donald. Angeles Partners IX (Set B).
Claim # 9695; Cal # 45.
Mismanagement.

Larm, Teresa. Angeles partners XIV.
Claim # 2184; Cal # 302.
GP was negligent.

Berman, Leonard. Angeles Partners XV.
Claim # 2649; Cal # 7.
Negligence and breach of duty.

Luetkenhaus, David. Angeles Partners XII (Set B).
Claim # 9964; Cal # 169.
Gross negligence.

Mc Coskrey, Virginia. Angeles Income Properties LTD III.
Claim # 1530; Cal # 241.
Angeles mismanaged.

## FRAUD

*OBJECTION OVERRULED.*

*PUT CLAIMS IN CLASS 5B; ANGELES HAS NOT SHOWN THAT THE ACTIVITY WAS LIMITED TO THE SALE OR PURCHASE.*

Burkhard, Linda. Angeles Partners XI.
Claim # 2071; Cal # 77.
Fraud.

Norum, Alvin. Angeles Partners XI.
Claim # 4852; Cal # 356.
Fraud, breach of duty, misrepresentation.

Torre, George. Angeles Partners XI.
Claim # 1531; Cal # 484.
Fraud.

Thomas, Edsel. Angeles Partners XIV (Set B).
Claim # 7721; Cal # 250.
Fraud.

Dickey, Elaine. Angeles Park Communities, LTD.
Claim # 458; Cal # 21.
Cheated.

Gaisor, Edith. Angeles Income Properties LTD III.
Claim # 4337; Cal # 118.
Lies and Angeles managed.

Waltrip Jr., James. Angeles Partners XI.
Claim # 761; Cal # 508.
Misrepresentation.

## BREACH OF DUTY (OTHER THAN MISMANAGEMENT).

*OBJECTION OVERRULED.*

*PUT CLAIMS IN CLASS 5B; ANGELES HAS NOT SHOWN THAT THE ACTIVITY WAS LIMITED TO THE SALE OR PURCHASE.*

Eischen, Charles. Angeles Park Communities, LTD.
Claim # 2192; Cal # 24.
Breach of partnership agreement.

Schultz, Anthony. Angeles Income Properties LTD IV.
Claim # 6778; Cal # 414.
Breach of partnership agreement.

Hickinbotham, Shirley. Angeles Partners XI.
Claim # 1123; Cal # 210.
Misuse of power.

Campbell, Claude. Angeles Income Properties LTD V (Set B).
Claim # 10218; Cal # 21.
No authority of Angeles to sell.

Greene, James. Angeles Partners XI (Set B).
Claim # 9441; Cal # 93.
Angeles held self out as manager.

McCarthy, Frank. Angeles Partners XIV.
Claim # 4155; Cal # 347.
Angeles was general partner.

Waldron Jr., Jackson. Angeles Partners VII.
Claim # 1828; Cal # 71.
Acts causing liability.

Arrington, Robert. Angeles Partners IX.
Claim # 6775; Cal # 8.
Acts causing liability.

Hamilton, Fredrick. Angeles Partners 16.
Claim # 3390; Cal # 5.
Adopts all other arguments.

Scholz, Richard. Angeles Partners XI.
Claim # 8658; Cal # 183.
Misconduct.

Hettick, Helen. Angeles Income Properties, LTD IV (Set B).
Claim # 8818; Cal # 125.
Obligated.

*OBJECTION SUSTAINED.*

*DISALLOW CLAIM; NO WRONGDOING BY ANGELES CLAIM.*

*NO CLAIM LEFT TO CLASSIFY.*

Wagner, Kenneth. Angeles Partners IX.
Claim # 2491; Cal # 217.
Co-investor liability.

Clere (shorter), Pamela. Angeles Partners X.
Claim # 4324; Cal # 39.
Secured claim.