In re GENEVA STEEL COMPANY,
Debtor.

Richard M. Allen, Appellant,

v.

Geneva Steel Company, Appellee.

BAP No. UT–00–070.
Bankruptcy No. 99–21130.

United States Bankruptcy Appellate Panel
of the Tenth Circuit.

April 4, 2001.

Richard M. Allen, pro se.

Steven J. McCardell of LeBoeuf, Lamb, Greene & MacRae, LLP, Salt Lake City, UT (Ralph R. Mabey and Joseph M. R. Covey of LeBoeuf, Lamb, Greene & MacRae, LLP, Salt Lake City, UT, and Bruce R. Zirinsky and Mark C. Ellenberg of Cadwalader, Wickersham & Taft, Washington, DC and New York, New York, with him on the brief), for Appellee Geneva Steel Company.

Before PUSATERI, CORNISH, and MICHAEL, Bankruptcy Judges.

**OPINION**

MICHAEL, Bankruptcy Judge.

Richard M. Allen ("Allen") appeals from an order of the Bankruptcy Court for the District of Utah ("bankruptcy court") disallowing in part and subordinating in part his claim against Geneva Steel Company, Debtor herein ("Debtor" or "Geneva Steel"). For the reasons set forth below, we affirm.

**I. Background**

On February 1, 1999, Geneva Steel filed for protection under Chapter 11 of the Bankruptcy Code (the "Code"). At the time, Geneva Steel had two public bond issues outstanding. One consisted of senior notes paying 11.125% interest and coming due in March 2001. The second bond issue consisted of senior notes paying 9.5% interest with a due date in 2004.

The trustee under the indenture for each of the bond issues timely filed proofs of claim on behalf of all note holders for the amounts owing. In July 1999, Allen filed a proof of claim in the amount of $500,000 based on fraud arising at an unknown date between 1997 and 1999 (the "Claim"). The only documentation accompanying the Claim was a letter dated January 25, 1999, from Allen to the chief executive officer of Geneva Steel. In the letter, Allen stated that he held more than $500,000 in the bond debentures (the "Notes") scheduled to become due in March 2001. *See Appendix to Appellant's Brief* at 40. Allen stated that he had retained the Notes due to the absence of public announcements by Geneva Steel concerning its financial difficulties. *See id.*

Geneva Steel filed its proposed Chapter 11 plan of reorganization (the "Plan") on July 20, 2000. Under the terms of the Plan, claimants holding bond debentures were grouped together in one class. Each member of the class was to receive, as sole distribution, common stock of the reorganized Debtor. All such distributions were to be made through the indenture trustee. Classes of claimants subordinate to the note holders were not to receive any distributions under the Plan.

On the same day it filed the Plan, Geneva Steel filed a Motion to Approve Certain Voting Procedures for Claims Based Upon the 11.125% Senior Notes Due in 2001 and 9.5% Senior Notes Due in 2004 and to Disallow Certain Duplicative Claims Relating to Such Notes (the "Motion"). Allen's Claim was among those Geneva Steel sought to disallow as duplicative of the claims filed by the indenture trustee. In response, Allen filed his Objection to Debtor's Motion to Approve Certain Voting Procedures for Claims Based Upon Senior Notes and to Disallow Certain Duplicative Claims Relating to Such Notes (the "Voting Procedures Objection"), asserting that his claim was based on principles of fraud rather than upon his ownership of the Notes.

Geneva Steel removed Allen's claim from the list of those it was seeking to disallow as duplicative, and on September 8, 2000, filed its Debtor's Objection to Claim of Richard M. Allen (Claim No. 755) and Motion to Determine Priority of Claim (the "Objection to Claim"). The bankruptcy court scheduled a hearing on the Objection to Claim for October 11, 2000. On September 25, 2000, Allen filed his Response to Debtor's Objection to Claim of Richard M. Allen (Claim No. 755) and Motion to Determine Priority of Claim (the "Response"). Attached to the Response were several pages showing a decline in the trading price of the Geneva Steel notes

during the period preceding the filing of the Chapter 11 petition.

On October 3, 2000, Allen filed a Motion to Adjourn Hearing on Debtor's Objection to Claim of Richard M. Allen (Claim No. 755) and Request for Telephone Conference (the "Motion to Adjourn"), seeking a continuance for the purpose of conducting discovery. On October 4, 2000, Geneva Steel filed its Debtor's Objection to "Motion of Richard M. Allen to Adjourn Hearing on Debtor's Objection to Claim of Richard M. Allen (Claim No. 755) and Request for Telephone Conference." The bankruptcy court conducted the hearing as scheduled on October 11, 2000. Allen appeared by telephone. The bankruptcy court denied the Motion to Adjourn without hearing argument from the parties and proceeded to hear Geneva Steel's Objection to Claim. Following a non-evidentiary hearing, the bankruptcy court ruled that (1) to the extent the Claim was based on the Notes, it was duplicative of the indenture trustee's claim and was therefore disallowed as a separate claim, and (2) to the extent the Claim was based on fraud, it was subordinated under § 510(b) as a claim for damages arising from the purchase or sale of a security. The bankruptcy court memorialized its ruling with a written order entered October 30, 2000 (the "October 30 Order").

Geneva Steel proposed additional plans for confirmation. On November 22, 2000, the bankruptcy court entered an order (the "Confirmation Order") confirming Geneva Steel's Third Amended Plan, as Modified (the "Third Amended Plan"). Under the terms of the Third Amended Plan, Allen's Claim was placed in a class created specifically for those claims subordinated under § 510(b) or (c) of the Code. Claims within the class were to receive no distributions.

Allen timely appealed the October 30 Order to this Court. In addition, Allen has filed two motions in the bankruptcy court: one seeking reconsideration of the Confirmation Order and the other seeking to stay the Confirmation Order pending the outcome of this appeal. Both motions are pending before the bankruptcy court.

## II. Jurisdiction

■ The Bankruptcy Appellate Panel, with the parties' consent, has jurisdiction to hear appeals from "final judgments, orders and decrees" issued by bankruptcy courts within the Tenth Circuit. 28 U.S.C. § 158(a)(1), (b)(1), (c)(1)[1]. A decision is considered final if it " 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)). An order on an objection to a claim is a final order for purposes of 28 U.S.C. § 158(a)(1). *See In re Garner*, 246 B.R. 617, 619 (9th Cir. BAP 2000). Similarly, an order fixing the priority of a creditor's claim is a final order for appeal purposes. *See In re Kids Creek Partners, L.P.*, 200 F.3d 1070, 1074 (7th Cir.2000). Neither party elected to have this appeal heard by the United States District Court for the District of Utah; thus, they have consented to this Court's jurisdiction. 28 U.S.C. § 158(c)(1); Fed.R.Bankr.P. 8001; 10th Cir. BAP L.R. 8001–1(a), (d).

## III. Standard of Review

■ The central thrust of Allen's appeal is twofold. He contends the bank-

---

**1.** Unless otherwise noted, all statutory references are to sections of the United States

Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

ruptcy court misinterpreted § 510(b) in applying it to his Claim and erred when it denied his Motion to Adjourn. The bankruptcy court's interpretation of a statute is a question of law that we review de novo. *See In re Gledhill,* 164 F.3d 1338, 1340 (10th Cir.1999). When reviewing questions of law de novo, the appellate court is not constrained by the trial court's conclusions and may affirm the trial court on any legal ground supported by the record. *See Wolfgang v. Mid–America Motorsports, Inc.,* 111 F.3d 1515, 1524 (10th Cir.1997). We review the bankruptcy court's denial of a motion for adjournment, or continuance, for an abuse of discretion. *See Gust v. Jones,* 162 F.3d 587, 598 (10th Cir.1998) (citing *United States v. Gutierrez,* 48 F.3d 1134, 1138 (10th Cir.), *cert. denied,* 515 U.S. 1151, 115 S.Ct. 2598, 132 L.Ed.2d 844 (1995)). "Under the abuse of discretion standard[,] 'a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.' " *Moothart v. Bell,* 21 F.3d 1499, 1504 (10th Cir.1994) (quoting *McEwen v. City of Norman,* 926 F.2d 1539, 1553–54 (10th Cir.1991)).

## IV. Discussion

Allen presents four arguments to this Court for consideration. First, Allen as-serts the bankruptcy court erred when it subordinated Allen's fraud Claim pursuant to § 510(b) of the Bankruptcy Code. Second, Allen argues that his Claim should be allowed pursuant to § 502(b) because Geneva Steel presented no evidence supporting its Objection to Claim. Third, Allen contends the bankruptcy court erred by not taking into account § 510(c) of the Bankruptcy Code when it made its ruling. Lastly, Allen argues the bankruptcy court erred in denying his Motion to Adjourn the October 11 hearing.[2]

### A. Subordination under § 510(b)

■ We read the bankruptcy court's October 30 Order as a determination that, as a matter of law, Allen's Claim for fraud falls within the confines of § 510(b)[3]. Allen asserts that the law does not support such a determination and that the bankruptcy court erred in concluding his Claim involves damages arising from the purchase or sale of securities. The pivotal point of Allen's argument is that § 510(b) does not apply here because the Claim is predicated upon his retention of the notes in the face of Geneva Steel's failure to disclose its financial difficulties. In Allen's view, under § 510(b), "[t]he subordinated claim must be causally connected to a purchase or sale of the security." *See Brief of Appellant* at 7.

---

**2.** Allen initially raised a fifth argument on appeal, asserting that the bankruptcy court erred by ruling that Allen's claim was subordinated in the absence of a plan providing for subordinated claims. The plan ultimately confirmed by the bankruptcy court does so provide, and Allen has moved for reconsideration of the Confirmation Order. With respect to his fifth argument here, Allen has conceded that "[f]or purposes of this appeal ... the error of the Bankruptcy Court in this regard has been rendered moot by Debtor's actions." *See Brief of Appellant* at 12.

**3.** The statute provides:

(b) For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, *for damages arising from the purchase or sale of such a security,* or for reimbursement or contribution allowed under section 502 on account of such a claim, *shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security,* except that if such security is common stock, such claim has the same priority as common stock. 11 U.S.C. § 510(b) (2001) (emphasis added).

To say that there is limited case law dealing with the application of § 510(b) to claims flowing from the post-investment acts of the debtor would be an understatement. The handful of cases involving even remotely similar fact patterns have found their way into the briefs of both parties. Generally, the courts have embraced one of two approaches. The first favors strict adherence to the language contained in the statute and places claims similar to Allen's beyond its reach. The second involves a less static construction and takes into account the relationship between § 510(b) and other Code sections, as well as the policies underlying the Code. Not surprisingly, Allen argues that cases adopting the former approach should inform our decision today.

Allen relies heavily upon the decisions reached by the courts in *In re Amarex*, 78 B.R. 605 (W.D.Okla.1987), and *In re Angeles Corp.*, 177 B.R. 920 (Bankr.C.D.Cal. 1995), *aff'd without published opinion*, 199 B.R. 220 (9th Cir. BAP 1996). In *Amarex* a group of limited partners filed proofs of claim against the corporate general partner that controlled the limited partnerships. *See Amarex*, 78 B.R. at 606. The limited partners sought damages resulting from violations of federal securities laws in connection with the sale and issuance of the limited partnership units. The limited partners also claimed damages resulting from breach of contract, breach of fiduciary duty, negligence and common law fraud. *See id.*

A group of trade creditors sought to have the claims of the limited partners subordinated under § 510(b). The bankruptcy court subordinated all the claims, finding that the limited partners would have had no claims but for the purchase and sale of the limited partnership units. *See id.* at 608. The claimants appealed, arguing that their state law claims based on events occurring in connection with the general partner's post-sale activities were not subject to the mandatory subordination provisions of § 510(b). *See id.* at 609. The district court reversed with respect to the claims founded on state law, stating: "Section 510(b) pertains only to claims based upon the alleged wrongful issuance and sale of the security and does not encompass claims based upon conduct by the issuer of the security which occurred after this event." *Id.* at 610.

The court in *Angeles* likewise was faced with a situation in which limited partners filed claims alleging the debtor/managing partner committed fraud, mismanagement and breach of fiduciary duty after the sale of the limited partnership interests. The debtor sought to subordinate the claims pursuant to § 510(b). *See Angeles*, 177 B.R. at 926. Following the rationale set forth in *Amarex*, the court determined that such claims were based on "independent intervening torts" and were therefore outside the scope of § 510(b). *Id.* at 927.

Geneva Steel advocates the broader interpretation of § 510(b) found in *In re Granite Partners, L.P.*, 208 B.R. 332 (Bankr.S.D.N.Y.1997). In *Granite Partners* a group of investors filed proofs of claim in the related bankruptcies of three hedge funds alleging, *inter alia*, that the debtors' post-investment fraud deceived them into holding onto their declining securities. The Chapter 11 trustee sought to subordinate the claims under § 510(b), and the investors argued that their fraudulent retention claims were independent torts that did not arise from the purchase or sale of the debtors' securities. *See id.* at 334.

The court undertook a thorough analysis of the history of § 510(b) and the rationale supporting it, including an examination of

cases decided before the adoption of the Bankruptcy Code. The court also juxtaposed language contained in the statute against similar language found in the 1995 Private Securities Litigation Reform Act and determined that the investors' fraudulent retention claims were subject to subordination under § 510(b). *See id.* at 336–42. Critical to the court's inquiry in *Granite Partners* were the relative risks borne by investors and general creditors.

First, from the creditors' point of view, it does not matter whether the investors initially buy or subsequently hold on to their investments as a result of fraud. In either case, the enterprise's balance sheet looks the same, and the creditors continue to rely on the equity cushion of the investment.

Second, a fraudulent retention claim involves a risk that only the investors should shoulder. In essence, the claim involves the wrongful manipulation of the information needed to make an investment decision. The [investors] charge that the debtors' [sic] wrongfully deprived them of the opportunity to profit from their investment (or minimize their losses) by supplying misinformation which affected their decision to sell. Just as the opportunity to sell or hold belongs exclusively to the investors, the risk of illegal deprivation of that opportunity should too. In this regard, there is no good reason to distinguish between allocating the risks of fraud in the purchase of a security and post-investment fraud that adversely affects the ability to sell (or hold) the investment; both are investment risks that the investors have assumed.[4]

*Id.* at 342. *See also International Wireless Communications Holdings, Inc.,* 257 B.R. 739, 745 (Bankr.D.Del.2001) (injury committed by debtor causally linked to purchase of securities despite being separated by time and action); *In re NAL Financial Group, Inc.,* 237 B.R. 225, 232 (Bankr.S.D.Fla.1999) (subsequent wrongful act no different than fraud committed during the purchase of securities for purposes of subordination under § 510(b)).

We are not unmindful of the fact that *Amarex* appears to be the only case within the Tenth Circuit addressing the issue we face today. However, we respectfully disagree with its holding and find the reasoning of *Granite Partners* persuasive. When Allen acquired the Notes, he accepted the same risks as Geneva Steel's other investors. The fact that the value of the Notes declined while Allen held them, even if his allegations of fraud are true, should not enable him to "eviscerate the absolute priority rule, and shift to creditors the investment risk assumed by the [note holders]." *Granite Partners,* 208 B.R. at 342.

Allen contends that there must be a causal connection between the purchase or sale of the securities and the damages alleged. We do not necessarily disagree with this argument but instead conclude that such a connection exists where the holder of securities alleges post-investment fraud. Although Allen took great care before the bankruptcy court to avoid alluding to his acquisition of the Notes, it is clear that he acquired them somehow.

Section 101(43) of the Bankruptcy Code defines a "purchaser" as a "transferee of a voluntary transfer, and includes immediate or mediate transferee of such a transfer-

---

4. The court went on to point out that concluding otherwise would lead to an anomalous result where an investor charging post-investment fraud could escape subordination while a third party who relied on the fraud and purchased from the investor would hold a subordinated claim. *See Granite Partners,* 208 B.R. at 342 n. 11.

ee." 11 U.S.C. § 101(43). This definition encompasses "all voluntary transferees, including transferees by gift or by sale." 2 *Collier on Bankruptcy* ¶ 101.43 (Lawrence P. King ed., 15th ed. rev.2000). Moreover, Utah's version of the Uniform Commercial Code defines a "purchase" as follows: " 'Purchase' includes taking by sale, discount, negotiation, mortgage, pledge, lien, issue or reissue, gift, or any other voluntary transaction creating an interest in property." Utah Code Ann. § 70A–1–201(32) (2000) (effective until July 1, 2001). Thus it is not necessary that Allen obtained the Notes when they were first issued. Nor is it necessary that he obtained them directly from Geneva Steel or that he provided any consideration in exchange for the Notes. His acquisition of the Notes places him in the category of "purchaser" as that term is defined in the Code and establishes a causal connection with the damages he seeks.

### B. Claims Allowance Under § 502(b)

■ Allen argues that his Claim should be allowed pursuant to § 502(b) because Geneva Steel presented no evidence supporting its Objection to Claim. This argument is unavailing. A properly filed proof of claim "constitute[s] prima facie evidence of the validity and amount of the claim." Fed.R.Bankr.P. 3001(f). Such a claim is deemed allowed unless a party in interest objects. *See* 11 U.S.C. § 502(a). The objecting party has the burden of going forward with evidence supporting the objection. *See Abboud v. Abboud (In re Abboud),* 232 B.R. 793, 796 (Bankr.N.D.Okla.), *aff'd,* 237 B.R. 777 (10th Cir. BAP 1999). Such evidence must be of probative force equal to that of the allegations contained in the proof of claim. *See id.* However, an objection raising only legal issues is sufficient. *See In re Lenz,*

110 B.R. 523, 525 (D.Colo.1990). Once the objecting party has reached this threshold, the creditor has the ultimate burden of persuasion as to the validity and amount of the claim. *See In re Harrison,* 987 F.2d 677, 680 (10th Cir.1993).

■ In the instant case, Geneva Steel timely objected to Allen's Claim, primarily on the ground that Allen's interests were protected by the indenture trustee's claim. *See Appendix to Appellant's Brief* at 17–20. The only evidence Allen provided that is probative of the validity or amount of the Claim is the letter attached to the Proof of Claim, which merely asserts Allen's ownership or "control" of the Notes. *See id.* at 40. Geneva Steel did not need to put forth any additional evidence in order for the bankruptcy court to render its limited ruling that Allen's Claim should be disallowed *to the extent it was duplicative of the indenture trustee's claim.* Allen's assertion that he held the Notes, combined with Geneva Steel's Objection alleging a legal basis for disallowing the Claim, was sufficient for the bankruptcy court to rule on the Objection to Claim.

Moreover, Allen's Response to the Objection to Claim states, "[t]he validity of my claim cannot be determined until the facts are known, which will require discovery." *See id.* at 21. This statement amounts to nothing less than a concession that Allen had no evidence supporting his Claim. Without placing evidence before the bankruptcy court, Allen could not meet his burden of persuasion regarding either the validity or amount of the Claim. In addition, we reiterate that the bankruptcy court *did not* disallow Allen's Claim in its entirety, but only to the extent that it was duplicative of the indenture trustee's claim. For other purposes, the Claim was therefore deemed allowed, albeit subordinated.

## C. Applicability of § 510(c)

■ Allen argues that the bankruptcy erred by not taking into account § 510(c) of the Bankruptcy Code[5]. He would have the bankruptcy court defer ruling on mandatory subordination until after the creditor has explored the possibility that senior claimants may be subject to equitable subordination. Put another way, Allen wants the court, the Debtor, and everyone else to sit idly by while he conducts a fishing expedition in the hopes of enhancing his position vis-a-vis other creditors. Allen has failed to provide even a single authority supporting this argument, which we find to be devoid of merit.

## D. Denial of the Motion to Adjourn

Allen contends that the bankruptcy court erred when it denied his Motion to Adjourn, or continue, the October 11 hearing. Geneva Steel argues that granting the Motion to Adjourn in order to permit Allen to conduct discovery would not have changed the outcome below because the bankruptcy court determined as a matter of law that Allen's Claim was subject to subordination under § 510(b).

■ Trial courts have broad discretion on matters of continuances. *See, e.g., Phillips v. Ferguson,* 182 F.3d 769, 775 (10th Cir.1999). " 'A trial judge's decision to deny a motion for a continuance constitutes an abuse of discretion only if the denial was arbitrary or unreasonable and materially prejudiced the [movant].' " *Id.* (internal quotes omitted). The bankruptcy court's interpretation of § 510(b) led it to conclude that to the extent Allen's Claim was based on fraud, it should be subordinated. Even if the bankruptcy court had granted the Motion to Adjourn, any additional evidence produced by Allen regarding his fraud allegation would not have resulted in a different interpretation of § 510(b). Thus, even if we were to conclude that the bankruptcy court acted arbitrarily or unreasonably in denying the Motion to Adjourn (which we do not), Allen cannot show that he was materially prejudiced as a result.[6]

---

**5.** The section provides:

(c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—

(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or

(2) order that any lien securing such a subordinated claim be transferred to the estate. 11 U.S.C. § 510(c).

**6.** We note that an action to subordinate an allowed claim should be addressed in an adversary proceeding. *See* Fed.R.Bankr.P. 7001(8). However, "[i]f an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding." Fed.R.Bankr.P. 3007. Where a party raises the subordination issue in an objection to claim, the court may treat the motion to subordinate as a motion for summary judgment, as if it had been filed in an adversary proceeding. *See In re Best Refrigerated Express, Inc.,* 192 B.R. 503, 508 (Bankr.D.Neb.1996).

The bankruptcy court, by disallowing Allen's Claim to the extent it was based on the Notes, implicitly allowed the Claim for other purposes. The bankruptcy court then addressed the subordination issue, concluding, as a matter of law, that Allen's claim was subject to § 510(b). Treating the bankruptcy court's ruling on the subordination issue as a ruling on summary judgment, we view the evidence and draw any inferences in a light most favorable to Allen. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Nevertheless, as discussed in Part IV–A above, we find no error in the bankruptcy court's order subordinating Allen's Claim.

## V. Conclusion

For the reasons set forth above, the order of the bankruptcy court is AFFIRMED.